# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

SHIRLEY JOHNSON, on behalf of herself and all
others similarly situated,

      Plaintiff,

v.

FRONTIER AIRLINES, a Colorado corporation,

      Defendant.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

## I.    INTRODUCTION

1.    Plaintiff Shirley Johnson ("Ms. Johnson" or "Plaintiff") purchased a round-trip ticket on Frontier Airlines, Inc. ("Defendant" or "Frontier"). After the COVID-19 pandemic began, Frontier cancelled Plaintiff's flight. Under Frontier's Contract of Carriage, Ms. Johnson had the contractual right to a refund. But instead of honoring this contractual right, Frontier issued Ms. Johnson a voucher for future travel and refuses to refund Ms. Johnson the amount she paid for her ticket. Ms. Johnson sues for Frontier to honor its contract and provide a refund for herself and all others similarly situated.

2.    The COVID-19 pandemic has caused a sharp decline in demand for air travel. Many airlines—including Frontier—have cancelled previously booked flights to reduce supply in conformity with the reduced demand.

Case 1:20-cv-01753-MEH   Document 1   Filed 06/15/20   USDC Colorado   Page 2 of 15

3.      Frontier's contract of carriage ("Contract of Carriage") unambiguously provides that if Frontier cancels a flight, it shall "provide a refund for the unused portion of the passenger's ticket."

4.      This requirement is also established by federal law. According to an enforcement notice issued by the United States Department of Transportation ("DOT") on April 3, 2020, carriers like Frontier have a "longstanding obligation . . . to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier." This refund obligation, DOT clarified, applies regardless of whether the cancellation arises from circumstances beyond the carrier's control: "[t]he focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger."

5.      Instead of fulfilling its obligations under federal law and honoring its passengers' contractual rights, Frontier has engaged in a pattern and practice of denying refund payments to its passengers for flights cancelled as a result of the COVID-19 pandemic. Frontier has refused to provide refunds, instead offering a voucher for future travel on Frontier that must be exercised within 90 days of a flight's cancellation—a condition that strips the "voucher" of value given current restrictions on travel, social distancing guidelines, and other uncertainties that preclude using the voucher in a timely manner.

6.      During a time of crisis and economic uncertainty, Frontier's practice of denying refunds has deprived Ms. Johnson and other consumers of money they paid for travel. Frontier's failure to provide refunds breached the terms of its Contract of Carriage, and Ms. Johnson accordingly sues to obtain the refunds to which she and the other Class members are entitled.

## II. PARTIES

### a. Plaintiff

7.    Plaintiff Shirley Johnson is a New Jersey citizen residing in Willingboro, New Jersey.

8.    On February 27, 2020, Ms. Johnson purchased an airline ticket from Frontier for $797.83. She purchased airfare for a round-trip flight from Philadelphia, Pennsylvania to Orlando, Florida departing April 18, 2020 and returning April 25, 2020. Ms. Johnson bought her tickets from Frontier online.

9.    On April 8, 2020, Ms. Johnson received an email from Frontier notifying her of her flight's cancellation.

10.    Frontier offered to issue Ms. Johnson a travel credit that purportedly would expire within 90 days.

11.    Ms. Johnson requested that her credit be converted to a refund. Frontier did not, however, provide her a refund. Ms. Johnson merely received an email from Frontier's CEO on May 6, 2020 informing her of the COVID precautions Frontier is taking.

12.    Ms. Johnson seeks the refund to which she is contractually entitled.

### b. Defendant

13.    Frontier is a Colorado corporation with its principal place of business in Denver, Colorado.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class

members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiff and Defendant are domiciled in different states.

15.     This Court has personal jurisdiction over Frontier because it has sufficient minimum contacts in Colorado to render the exercise of jurisdiction by this Court fair and proper. Frontier intentionally avails itself of markets within Colorado through its promotion, distribution, and sale of transportation services in this State.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Frontier's principal place of business is located within the District of Colorado and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II.     SUBSTANTIVE FACTS

### A.     Frontier's Contract of Carriage

17.     According to Frontier, when a customer pays airfare for a Frontier flight, the customer is subject to Frontier's Contract of Carriage.

18.     Under both its May 2019 (Version 70) and May 2020 (Version 74) Contracts of Carriage, and at all other relevant times, Frontier's Contract of Carriage "appl[ied] to all tickets issued for travel on flights operated by or for Frontier Airlines, Inc. ('Frontier') as well as that transportation regardless of whether such ticket was sold by Frontier or its authorized agents or whether such ticket is used ('Contract of Carriage')."

19.     Section 18 of Frontier's Contract of Carriage concerns specific remedies for flight cancellation, providing:

> Delay, Misconnection, or Cancellation – In the event (i) a passenger's flight is canceled, . . . to the extent possible, Frontier will provide transportation on its own flights at no additional charge to the passenger's original destination or equivalent destination as provided herein. Frontier will have no obligation to provide transportation on another carrier. If Frontier cannot provide the foregoing transportation,

> Frontier **shall, if requested, provide a refund** for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing.

20.     Section 18 of the Contract of Carriage likewise states that in the event of force majeure, "Frontier may cancel, divert, or delay any flight without liability *except to provide a refund for the unused purchase of the ticket.*"

21.     Under Section 20 of the Contract of Carriage, where the ticket is not used, "the refund amount will be equal to the fare" and other charges paid for the ticket. The refund, furthermore, "will be provided only to the original purchaser's form of payment."

22.     The Contract of Carriage also confirms that all refunds "will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and of the country in which the refund is being made."

23.     Under these terms, if Frontier cancels a flight, it is contractually obligated to provide to each affected passenger the option to receive a full refund of the fare for the ticket.

24.     The Contract of Carriage does not authorize providing vouchers to customers when Frontier has cancelled a flight.

**B.     The COVID-19 Pandemic**

25.     In late 2019, the Chinese government confirmed several cases of a novel illness causing pneumonia-like symptoms. The illness was subsequently identified as COVID-19 (also known as the "Coronavirus" or "SARS-CoV-2"). By January 2020, the U.S. government confirmed several domestic cases.

26.     COVID-19 spread rapidly through the world in the first quarter of 2020. Millions have now been infected. The World Health Organization characterized COVID-19 as a "public

health emergency of international concern" in late January and as a pandemic on March 11, 2020.[1]

27.     Because the virus that causes COVID-19 is highly infectious, and because the illness can be severe or fatal, federal, state, and local governments in the United States have implemented travel restrictions and shelter-in-place or stay-at-home orders. New Jersey's stay-at-home order took effect on March 21, 2020.[2] As of the filing of this Complaint, the vast majority of states have ordered their citizens to shelter in place for protection of their personal health and safety and that of the broader public.

28.     The crisis, travel restrictions, and fear of contracting or spreading the disease have caused a sharp drop in demand for air travel. In April 2020, Frontier cut 90% of its flight capacity nationally.[3]

### C.     The Federal Regulations and DOT Notice

29.     Frontier's failure to provide refunds breaches its contract with its passengers, as alleged herein, and also violates applicable federal regulations. Specifically, 49 U.S.C. § 41712 prohibits unfair or deceptive practices in the air carrier industry, and "since at least the time of an Industry Letter of July 15, 1996 . . . the [DOT's] Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation" of section 41712. Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, 23129.

---

[1] https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited June 14, 2020).

[2] https://www.wired.com/story/whats-shelter-place-order-whos-affected/ (last visited Jun 14, 2020).

[3] https://www.cleveland.com/business/2020/04/frontier-airlines-cuts-90-of-capacity-flying-only-to-orlando-from-cleveland-hopkins-in-april.html (last visited June 14, 2020).

30.     As airlines like Frontier began to cancel flights *en masse*, DOT on April 3, 2020 issued an "Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel."[4] This DOT notice advises, in relevant part, "U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be refunded promptly when their scheduled flights are cancelled or significantly delayed." The DOT notice further states: "Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged."

31.     The DOT issued its notice due to its receipt of an increasing number of customer complaints from passengers like Ms. Johnson who reported being denied refunds. The notice thus makes clear that:

> Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.

---

[4] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf. (last visited June 14, 2020).

**D.      In Breach of Its Contractual Obligations, Frontier Has Denied Consumers
        Refunds During the Pandemic**

32.     During the COVID-19 crisis, Frontier has cancelled a high volume of flights.
While exact numbers are in the exclusive possession of Frontier, in late March, airlines were
canceling over one-third of all scheduled flights each day in the United States.

33.     Because of the number of flights cancelled, Frontier had substantial financial
incentives to prevent passengers from obtaining the refunds to which they were contractually
entitled.

34.     To limit the number of refunds Frontier would be required to issue, starting in
March 2020, Frontier engaged in a pattern and practice of denying refunds, and instead foisting
vouchers on its customers. Worse, Frontier unilaterally imposed as a condition that the vouchers
had to be used within 90 days, even with the shelter-in-place orders. Frontier's condition is
simply unworkable because the unprecedented pandemic has neutralized travel and made it
impossible for most people to make concrete travel plans.

35.     As reported on the travel website *One Mile at a Time*, "Frontier Airlines has by
far the worst rebooking policy . . . Frontier Airlines is requiring customers to rebook future travel
within 90 days of cancellation, and travel has to be completed by November 9, 2020.  Giving
customers just 90 days to rebook is rather ridiculous when you consider the amount of
uncertainty at the moment."[5]

---

[5] https://onemileatatime.com/frontier-airlines-convert-vouchers-into-
miles/#:~:text=Frontier%20Airlines'%20awful%2090%20day%20rebooking%20policy,-
Frontier%20Airlines%20has&text=Frontier%20Airlines%20is%20requiring%20customers,of%2
0uncertainty%20at%20the%20moment (last visited June 14, 20200.

Case No. 2020-cv-01158-PAB-KLM Document 1 Filed 06/15/20 USDC Colorado page 10
of 16
Case 1:20-cv-01751-MEH Document 1 Filed 06/15/20 USDC Colorado Page 9 of 15

36.     The internet is replete with complaints from consumers like Ms. Johnson who were denied refunds by Frontier during the COVID-19 pandemic.  Below is a small sample of the many complaints submitted to the Better Business Bureau:[6]

- I applied to Frontier Airlines for a full refund as my flight was canceled due to COVID-19. The airlines will only offer a credit that I do not want, they will not refund what I paid for my ticket.

- On April 30th I received an email stating that my flight to Miami from Boston in June had been cancelled by Frontier Airlines. The email stated that I had to follow a link to get a refund. After I pressed except it stated that I would receive a refund in 7 days. . . . On may 9th I called frontier regarding my refund that I still did not receive. They stated that I would only get a ticket credit versus a refund.

- I was supposed to receive a refund . . . . I called again today 5/17/20 after waiting an entire month for this refund to come to my card and a representative then told me that now i am not getting a refund and instead attempted to tell me i would receive flight vouchers. I DO NOT want or need flight vouchers . . . . I was promised by 2 previous representatives that my refund would be $144.60 and would be returned to my original payment method within 7 business days.

- I purchased a round trip plane ticket, with baggage, through frontier airlines for April 20, 2020 - April 29, 2020. Prior to the dates that flights were canceled by frontier. I was sent an email stating that since frontier canceled my flights that I would be eligible for a refund or a credit if I so choose. Since I am in healthcare and work directly with + confirmed COVID 19 patients I don't think it's best for me to be flying anytime soon so of course a refund is more appropriate. I have been in contact with frontier via phone x3 (4/6/2020, 4/24/2020, 5/14/2020). On the 1st two phone conversations I was reassured that I was in fact eligible for a refund and sent confirmation emails. Having not received my refund I reached out to them again yesterday and spoke with 3 different people regarding my refund. Now I'm being told that I am not eligible for a refund due to me "accepting the canceled flights". I explained that yes I responded to their email stating I understood the flights were canceled. I however have told them multiple times I want a refund. I was told yesterday that I can use my credit for the next 90 days and that "hopefully a vaccine will be available soon".

37.     Frontier's tactics saved it money but also provoked outrage. On March 31, 2020, a group of Senators, including Edward J. Markey, Richard Blumenthal, Elizabeth Warren, and

---

[6] https://www.bbb.org/us/co/denver/profile/airlines/frontier-airlines-inc-0885-55000095/complaints

Sheldon Whitehouse, sent a letter to Frontier CEO Barry L. Biffle urging the airline to "issue full cash refunds to all customers" whose flights are cancelled during the crisis.[7]

38.     The Senators noted the toll the crisis has taken on personal finances: "The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food housing, and medical care." The Senators further criticized Frontier's conduct as particularly inequitable given that the government bailed out the airline industry: "In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry has just received from Congress,[8] we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers . . . ."

39.     Despite its contractual obligations and the requirements imposed on it by the DOT and 49 U.S.C. § 41712, Frontier has deprived Plaintiffs and the Class of the refunds to which they are entitled by (1) failing to provide refunds to their credit or debit cards consistent with the terms of its Contract of Carriage; (2) issuing coupons or vouchers in place of refunds; and/or (3) impeding the ability of passengers to exercise their right to a monetary refund.

III.    **CLASS ALLEGATIONS**

40.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) as a representative of a class seeking damages and injunctive relief defined as follows:

> All persons or entities in the United States who purchased at least one ticket for a Frontier flight that was cancelled between January 1, 2020, and the present and who did not receive a refund (the "Class").

---

[7] https://www.markey.senate.gov/imo/media/doc/Airline%20Cash%20Refunds%20for%20Coron avirus%20Cancellations.pdf (last visited June 14, 2020).
[8] Coronavirus Aid, Relief, and Economic Security (CARES) Act, § 4003(b)(1), Pub. L. No. 116-136, https://www.congress.gov/bill/116th-congress/house-bill/748/text.

Case 1:20-cv-01751-MEH  Document 1  Filed 06/15/20  USDC Colorado  Page 11 of 12
Case No. 2020-cv-01513-RABsdrM  Document 26-1 filed 06/23/20  USDC Colorado  Page 11 of 16
of 16

41.     The following persons and entities are excluded from the Class: Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; and the judicial officers and their immediate family members and associated court staff assigned to this case. Plaintiff reserves the right to modify the class definition based upon discovery and further investigation and/or to add appropriate subclasses.

42.     The members of the Class are so numerous that joinder is impracticable. The Class includes at least thousands of members. Frontier sells millions of tickets every year, and the recent cancellation of Frontier flights affected thousands of U.S. travelers. These individuals are widely dispersed throughout the country.

43.     Plaintiff's claims are typical of the claims of all Class members. Plaintiff's claims arise out of a common course of conduct that gives rise to the claims of all other Class members. Plaintiff and all Class members were and will continue to be damaged by the same wrongful conduct, *i.e.*, they were not able to obtain refunds from Frontier to which they are contractually entitled for cancelled flights.

44.     Plaintiff will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

45.     Plaintiff is represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with consumer class action litigation.

46.     Questions of law and fact common to the Class include:

   a.  Whether Frontier's customers had a contractual right to refunds for flights cancelled by Frontier;

   b.  Whether Frontier breached its contract with customers when it did not provide refunds for flights that Frontier cancelled;

  c. Whether Frontier breached its contract with customers by failing to provide an adequate means for customers entitled to receive refunds for flights that Frontier cancelled to request or otherwise obtain such refunds;

  d. Whether Frontier breached its contract by providing Class members with vouchers instead of refunds;

  e. Whether Frontier's conduct breaches its contracts with Class members;

  f. The appropriate injunctive relief; and

  g. The quantum of damages to which the Class is entitled.

47. Questions of law and fact common to the Class members predominate over any questions that may affect only individual Class members, because Frontier has acted on grounds generally applicable to the entire Class.

48. Class treatment is a superior method for the fair and efficient adjudication of the controversy because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in a similar forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons and entities with a means of obtaining redress on claims that likely would be impracticable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

49. Class treatment also is appropriate under Rule 23(b)(2) because Frontier has acted and refused to act on grounds that apply generally to the Class such that final injunctive relief and/or declaratory relief is warranted with respect to the Class as a whole.

## IV. CLAIM FOR BREACH OF CONTRACT

50. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

51.     Defendant made an offer to Plaintiff and members of the Class to enter into a contract for one or more airplane flights through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates and times, at specific prices.

52.     Defendant's offer included a promise that Defendant would refund fares and any carrier-imposed charges and surcharges, and taxes, fees and charges that Plaintiff and Class members have paid if Defendant cancelled the flights purchased. This promise was specifically made in Defendant's materially uniform Contract of Carriage.

53.     Defendant made such offers in writing through its direct channels (such as its website) and through traditional travel agencies and online travel agencies.

54.     The terms of Defendant's offer contained an express, definite promise by Defendant and gave Plaintiff and members of the Class the power to agree to the terms of Defendant's offer through the act of purchasing a ticket or accepting transportation on Defendant's aircraft.

55.     Plaintiff and members of the Class accepted Defendant's offer, agreeing to the terms contained in Defendant's offer, including the Contract of Carriage. Plaintiff and members of the Class communicated their acceptance of Defendant's offer by purchasing one or more plane tickets.

56.     Plaintiff and members of the Class provided valuable consideration, namely the monetary value of the fare and all charges and taxes paid.

57.     Plaintiff and members of the Class performed all obligations and conditions required and expected of them under their contract with Defendant.

58.     Defendant cancelled flights for which Plaintiff and members of the Class had tickets.

59. Defendant failed to provide refunds to Plaintiff and members of the Class, as it was contractually obligated to do. Instead of offering refunds, Defendant acted to prevent Plaintiff and members of the Class from requesting refunds, and in lieu of providing refunds, offered them vouchers for future travel.

60. As a result, Defendant failed to perform and materially breached its express obligations under its contract with Plaintiff and members of the Class.

61. Because of Defendant's failure to perform the contract, Plaintiff and members of the Class have been damaged and/or did not receive the benefits, payment, and/or performance to which they were entitled.

62. As a result, Plaintiff and members of the Class are entitled to complete refunds for all fares, charges, and taxes paid, in an amount to be proven at trial.

## V.    **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully demands that the Court:

A. Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), and (b)(3), direct that notice of this action be given to the Class pursuant to Rule 23(c)(2), and appoint Plaintiff as a named representative of the Class;

B. Permit expedited discovery proceedings leading to a prompt trial on the merits before a jury;

C. Enter judgment against Defendant and in favor of Plaintiff and the Class;

D. Award damages and refunds in the amount of unrefunded monies paid for Frontier airline tickets, in addition to statutory damages, punitive or exemplary damages, and pre-judgment and post-judgment interest, and such other relief as permitted by law;

E.      Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

F.      Enter injunctive relief to stop Defendant's unlawful conduct; and

G.      Award such further and additional relief as is necessary to correct for harms Defendant's unlawful conduct caused and as the Court may deem just and proper under the circumstances.

## VI.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: June 15, 2020

BERGER MONTAGUE PC

/s/ *Shanon J. Carson*
Shanon J. Carson
1818 Market Street
Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-4656
Email: scarson@bm.net

BERGER MONTAGUE PC
John G. Albanese
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel: (612) 594-5997
Fax: (612) 584-4470
Email: jalbanese@bm.net

GIRARD SHARP LLP
Adam E. Polk
Jordan Elias
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
Email: apolk@girardsharp.com
Email: jelias@girardsharp.com

*Attorneys for Plaintiff*