IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-01153-PAB-KLM

MELISSA YOUNG, on behalf of herself and all others similarly situated;

    Plaintiff,

v.

FRONTIER AIRLINES, INC.;

    Defendant.

---

**FRONTIER AIRLINES, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Defendant Frontier Airlines, Inc. ("Frontier") moves to dismiss Plaintiff's First Amended Complaint ("FAC") for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1) because Plaintiff: (i) brings a lawsuit preempted by federal law; (ii) fails to state a breach of contract claim; (iii) lacks standing to pursue injunctive relief; and (iv) is precluded by Frontier's Contract of Carriage ("Contract") from pursuing class action allegations or recovering attorney's fees in this action.

### I.    INTRODUCTION & FACTUAL BACKGROUND

As a result of the devastating impact of the COVID-19 pandemic, like many air carriers, Frontier was forced to significantly reduce its flights due to drastically lower consumer demand. These measures also necessitated the cancellation of many flights. FAC ¶ 2. When passengers book travel aboard Frontier, they become bound by its Contract,[1] which outlines the airline's

---

[1] The FAC attaches a version of the Contract that post-dated Plaintiff's alleged March 2020 ticket

1

obligations to its passengers in a variety of situations. *Id.* ¶ 12, Ex. A § 18. The Contract specifies that when Frontier cancels a flight, it must attempt to reaccommodate the passenger on another Frontier flight, and if it is unable to do so and the passenger makes a specific request, refund the unused portion of the fare to the passenger's original method of payment. *Id.* If a passenger does not specifically request a refund or cancels their travel *before* Frontier cancels that flight, the passenger is *not* entitled to a refund. *Id.*

Plaintiff, a South Carolina resident, alleges that in March 2020—in the midst of Coronavirus emerging as a national concern—she purchased two roundtrip tickets for a May 19, 2020, Frontier flight from Myrtle Beach, South Carolina to Long Island, New York. *Id.* ¶ 18. On March 19, 2020, Frontier emailed Plaintiff to advise that the May 19, 2020, flight was now canceled, and offered her a rebooking or a travel voucher. *Id.* On March 19, 2020, Plaintiff called Frontier to request a cash refund and was advised that she would receive one. *Id.* Plaintiff alleges that refund never came, and that during a call with Frontier two weeks later, Frontier advised her that she was never offered a cash refund and that she was only entitled to a travel voucher. *Id.*

The FAC includes one cause of action—breach of contract—on behalf of herself and a putative nationwide class of Frontier passengers. *Id.* ¶¶ 32-36. Plaintiff seeks injunctive relief and to recover her attorney's fees. *Id.* ¶ 31, Prayer for Relief. Plaintiff's recovery is barred on the four corners of the FAC alone and the FAC should be dismissed in its entirety.

## II.     APPLICABLE LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss permits courts to terminate lawsuits that are fatally

---

purchases. *See* attached Declaration of David Ross ("Ross Dec."), **Exhibit 1**. Few changes exist between these versions; to the extent they differ as relevant herein, Frontier solely references the version attached to the FAC, and to the extent they differ, Frontier explains the difference herein.

flawed in their legal premises and destined to fail, sparing litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of elements of a Cause of Action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A plaintiff must allege facts sufficient to "nudge his claims…across the line from conceivable to plausible." *Id.* at 683. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (citations omitted). A motion to dismiss under Rule 12(b)(1) tests standing to ensure the constitutional limitation of federal court jurisdiction to actual cases or controversies. *Simon v. Eastern KY Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Where a plaintiff seeks injunctive relief, he must demonstrate a real and immediate threat of future injury to satisfy the injury in fact requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-04 (1983).

### III.   ARGUMENT

**A. Plaintiff's Claim Is Preempted by the Airline Deregulation Act of 1978**

To the extent Plaintiff's breach of contract claim attempts to rely upon, or must be adjudicated with reference to any external law or policy, her claim is barred by the doctrine of federal preemption and cannot proceed. Because Plaintiff sues Frontier, an airline, this case is subject to the Airline Deregulation Act of 1978 ("ADA"). The ADA precludes claims relating to "a price, route, or service of an air carrier" based on state "law, regulation, or other provision having the force and effect of law." 49 U.S.C. § 41713(b)(1). Airline refund cases relate to the

3

airline's prices and are therefore encompassed by the ADA. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 31 (1st Cir. 2007); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 541-42 (7th Cir. 1992).

A narrow exception to ADA preemption exists for breach of contract claims seeking to recover "solely for the airline's alleged breach of its own, self-imposed undertakings." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 227-28 (1995). The *Wolens* exception is inapplicable when a plaintiff seeks to invalidate instead of enforce a contract. *Id.* at 233 (courts are confined, "in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement"). *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 289 (2014) (holding ADA preemption applies where plaintiff uses an external law to enlarge his rights under a contract); *Alaska Airlines, Inc. v. Carey*, 395 F. App'x 476, 479 (9th Cir. 2010) (finding preemption barred plaintiff's effort to invalidate airline contract). If Plaintiff's breach of contract claim cannot be adjudicated without resort to external law or policies, the ADA preempts her claim. *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) (dismissing breach of contract claim on ADA preemption grounds because claim could not be adjudicated without reference to federal laws external to parties' agreement); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*, 17 S.W.3d 52, 58-59 (Tex. App. 2000) (dismissing breach of contract claim that could not be adjudicated without reference to state laws external to parties' agreement on ADA preemption grounds); *Howell v. Alaska Airlines, Inc.*, 994 P.2d 901, 905 (Wash. App. 2000) (same).

The FAC repeatedly references April 3, 2020 and May 12, 2020 U.S. Department of Transportation ("DOT") Enforcement Notices. FAC ¶¶ 3-4, 11, 15, 28. In citing those Notices, Plaintiff seeks to enlarge the obligations voluntarily undertaken by the parties through the Contract by introducing an external document, and her claim is therefore preempted. Further, to the extent

4

her breach of contract claim cannot be adjudicated without reference to that external policy, or to the law upon which the DOT Notices is based, Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011), her claim is preempted. Thus, to the extent that the breach of contract claim is not limited to the terms of the parties' Contract, the claim is preempted.

While Plaintiff's references to the DOT Notices support the preemption of her breach of contract claim, even if preemption did not apply, the Notices do not assist Plaintiff in meeting her burden to show a viable breach of contract claim. DOT guidance is not enforceable in a private action. *Wolens*, 513 U.S. at 222. *See Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 36-37 (1st Cir. 2007) ("The plaintiffs have not directed us to a single case holding that a federal regulation incapable of spawning an implied private right of action may be enforced between private parties as an implicit contractual term."); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 541 (7th Cir. 1993) ("DOT, not private parties, will enforce consumer protection rules against the airlines."); *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (no private right of action to enforce airline's violation of DOT regulations about compensating passengers impacted by oversold flights). Plaintiff also has not alleged that the Contract is ambiguous to permit the consideration of extrinsic evidence. *Fort Lyon Canal Co. v. High Plains A&M, LLC*, 167 P.3d 726, 729 (Colo. 2007).

### B. The FAC Fails to State a Claim for Breach of Contract

In addition to the unavailability of the DOT Notices for Plaintiff to prove a breach of contract claim, she fails to sufficiently plead her claim for two independently dispositive reasons: (1) Frontier performed under the contract; and (2) Plaintiff sustained no damages. The elements of breach of contract are: (1) existence of a contract; (2) performance by the plaintiff; (3) non-performance by the defendant; and (4) damages. *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d

1032, 1041 (D. Colo. 2012). Setting aside the first two elements for the purposes of this Motion, Plaintiff's own factual allegations show that Frontier met its obligations under the Contract by offering to rebook Plaintiff on a different flight; and because Plaintiff was also offered a voucher for future air travel from Frontier, she is unable to show that she sustained any damages as a result of any alleged non-performance by Frontier. For these reasons, she fails to state a claim.

### 1. Frontier Performed Under the Contract

Notwithstanding Plaintiff's allegations that Frontier breached the Contract, her factual allegations and the terms of the Contract demonstrate that Frontier satisfied its contractual obligations. Frontier cancelled her flight as permitted under the Contract and offered to rebook her on a later flight in compliance with its obligations. FAC ¶ 18, Ex. A § 18 C, E. She instead demanded a refund. FAC ¶ 18. Frontier had no obligation to provide a refund under these circumstances. Upon the cancellation, the Contract required Frontier to provide a flight to the passenger's original destination, and only required a refund if Frontier could not do so and the passenger requested a refund, and limits Frontier's liability to this process. FAC Ex. A § 18 C, E. The breach of contract claim fails because Frontier performed under the Contract when it offered Plaintiff the option to rebook her flight and ultimately offered her a voucher, as alleged in the FAC.

Under the Contract, Colorado law governs this dispute. The Contract provides that it "will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law." FAC Ex. A § 22 J. Under Colorado law, contract interpretation is a question of law for a court to decide. *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Invs. II*, LLC, 887 F.3d 1003, 1017 (10th Cir. 2018). "The primary goal of contract interpretation is to determine and effectuate the intent and reasonable

expectations of the parties." *Id.* at 1018. "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Id.* A court "should be wary of viewing clauses or phrases in isolation," "instead reading them in the context of the entire contract, seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Id.* (internal quotations and citations omitted). "On a motion to dismiss, allegations in a complaint do not overcome contradictory statements in the text of a contract attached to the complaint." *Id.* (internal quotations and brackets omitted).

Plaintiff alleges that the Contract is the operative document for this lawsuit, but bases her entire case on the incorrect allegation that the Contract's terms required Frontier to refund her the cost of her cancelled flight. Section 18 governs situations where there is a failure to operate on schedule or a failure to carry. FAC Ex. A § 18. Section 18 has four relevant subsections: A – Liability Limited, B – Force Majeure, C – Delay, Misconnection, or Cancellation, and E – Schedule Change Prior to Day of Travel. *Id.* These subsections address Frontier's obligations in the event of a cancellation or schedule change.[2]

### i. Section 18 A – Liability Limited Demonstrates that Plaintiff Had No Guarantee for Transportation on her Ticketed Flight

Pursuant to § 18 A of the Contract, "Frontier will use reasonable efforts to transport passengers . . . to the purchased destination, but published schedules, flight times . . . and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage." FAC Ex. A § 18 A. "Frontier may . . . change schedules, delay or

---

[2] Frontier does not take the position that one of these subsections takes precedent over the other under the facts pled in the FAC. Frontier reserves the right to argue that one or more of the § 18 subsections apply or do not apply based on the evidence. But, for the purposes of this Motion, Frontier addresses all the potentially relevant subsections to show that it complied with all of the terms of § 18 of the Contract based on the facts pled by Plaintiff.

cancel flights . . . as required by its operations in Frontier's sole discretion." *Id.* "Frontier's obligations for failure to operate any flight, failure to operate a flight according to its schedule, or for changing the schedule . . . with our without notice to the passenger are set forth [in § 18 B-F]." *Id.* The gravamen of the FAC is that Plaintiff was entitled to either transportation on her booked flight or a refund – anything else was a breach of the Contract. Frontier was permitted pursuant to § 18A, at its sole discretion, to cancel her flight and rebook her flight pursuant to § 18 B-F. Plaintiff had no absolute contractual right to a refund in the event her flight was cancelled.

### ii. Section 18 C - Delay, Misconnection, or Cancellation Allows for Rebooking of Plaintiff on a Later Flight and a Refund is not Required Here

Section 18 C controls in the event of a cancellation. FAC Ex. A § 18 C. It provides in pertinent part: "In the event (i) a passenger's flight is canceled," "Frontier will provide transportation on its own flights at no additional charge . . . . ***If Frontier cannot provide the foregoing transportation***, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing. The foregoing shall be the limit of Frontier's liability for the matters covered by this provision." *Id.* (emphasis added). Plaintiff alleges that Frontier offered to rebook her on another flight, but she refused and demanded a refund. FAC ¶ 18. Because Frontier was able to provide transportation on its own flights (and offered to do so), it was not obligated to provide a refund under § 18 C, despite Plaintiff demanding a refund. Offering to rebook Plaintiff on a later flight and ultimately offering her a voucher for future travel was the limit of Frontier's obligations under the Contract in the event of a cancellation. As such, Frontier performed under the Contract and the breach of contract claim fails.

### iii. Section 18 E - Schedule Change Prior to Day of Travel

For schedule changes, § 18 E in effect when Plaintiff purchased her tickets provides:

8

> When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:
> 1) Transport the passenger over its own route system to the destination; or
> 2) In the event the schedule modification is significant, at Frontier's discretion, it may refund the cost of the unused portion of the ticket.

Ross Dec. Ex.1 § 18 E. Frontier complied with the Contract. Plaintiff admits Frontier offered to rebook her on a later flight. FAC ¶ 18. Frontier was not required to refund the cost of Plaintiff's ticket when she refused the rebooking. Additionally, Plaintiff does not allege that the potential later flight constituted a "significant" "schedule modification." Even if Plaintiff had alleged a significant change occurred, Frontier had the discretion, not the mandatory requirement, to offer a refund and it chose to rebook Plaintiff as permitted by the Contract. Ross Dec. Ex.1 § 18 C, E. Thus, the allegations in the FAC show the absence of a breach.

### iv. Frontier Has No Obligation to Provide a Refund Under the § 18 B Force Majeure Provision Because that Provision is Harmonized with All of § 18

With respect to *force majeure* circumstances, § 18 B provides that Frontier may cancel any flight without liability "except to provide a refund for the unused portion of the ticket." FAC Ex. A § 18 B. This provision must be read in harmony with the rest of the Contract in general and the other subsections of § 18 specifically. "When interpreting a contract, [the court's] task is to give effect to the intent of the parties." *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. Ct. App 2011) (internal quotations omitted); *Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*, 734 Fed. Appx. 586, 589 (10th Cir. 2018) ("[W]e must interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Bledsoe Land Co*, 277 P.3d at 842. "That language must be examined and construed in harmony with the plain and generally accepted meaning of the words

9

used, and reference must be made to all the agreement's provisions." *Id.*

When § 18 B is read in harmony with the rest of § 18, it is clear that there is no requirement for an automatic refund in the event of a *force majeure*—assuming *arguendo* that *force majeure* even applies in the context of Frontier's flight cancellations related to the COVID-19 pandemic—while Plaintiff references this provision, FAC ¶ 12, the FAC contains no allegation that her cancelled flight resulted from a *force majeure* event. Even if Plaintiff had made that allegation, this Court would have to look to § 18 C and E, which govern cancellations and schedule changes. As addressed above, Frontier must provide a refund only when it cannot provide transportation on a different flight. Ross Dec. Ex. 1 § 18 C, E. Read in harmony, the language "without liability except to provide a refund" in § 18 B refers to instances where Frontier cannot provide the rebooking referenced in § 18 C and E. Stated otherwise, the requirement to provide a refund in § 18 B sets the outer limits of Frontier's liability in the event of a *force majeure*. It does not set the minimum obligation of Frontier as made clear when read in conjunction with § 18 C and E. Under Colorado law, a contract is interpreted in its entirety and so that no provision will be rendered meaningless. *Nat'l Union Fire Ins. Co.*, 734 Fed. Appx. at 589. This Court should read any refund requirement under § 18 B in the context of the accompanying contractual obligation of providing rebooking and then only a refund if a rebooking is not possible.

To read the refund language of the *force majeure* provisions in isolation would render § 18 C and E meaningless whenever a *force majeure* event required a cancellation or schedule change. Those subsections allow rebooking and do not require a refund unless (1) rebooking is not available; (2) any change is determined to be significant; and (3) the passenger requests a refund. Ross Dec. Ex.1 § 18 C, E. Here, (1) and (2) are missing, precluding any breach by Frontier.

10

### C. Plaintiff Did Not Sustain Any Damages

Plaintiff's breach of contract claim is also deficient because she does not adequately allege that she sustained damages. As alleged in the FAC, Frontier offered to rebook Plaintiff on a later flight once her original flight was cancelled. FAC ¶ 18. Plaintiff alleges she declined Frontier's offer of rebooking and instead demanded a refund to which she was not entitled under the plain language of the Contract. FAC Ex. A § 18 C, E. Ultimately, Frontier's offer of a voucher for future flight travel precludes her from sustaining actionable damages. FAC ¶ 18.

"In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: expectation damages, reliance damages, and restitution damages." *Spring Creek Exploration & Prod. Co., LLC*, No. 17-1010, 2018 U.S. App. LEXIS 9803, *44 (10th Cir. Apr. 10, 2018). "The root purpose of a contract remedy is to place the plaintiff-promisee in as good a position as it would have occupied had the defendant-promisor not breached the contract." *Id.* (internal quotations and brackets omitted). "In an action for breach of contract, expectation damages are the norm." *Id.* (citing *Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 337 (Colo. 2000) (In a breach of contract action, "a plaintiff may recover the amount of damages necessary to place him in the same position he would have occupied had the breach not occurred.")).

Here, the alleged bargained for exchange was "to provide services in the form of flights in exchange for a set amount of money." FAC ¶ 34. When Plaintiff's flight was cancelled, Frontier offered her another flight, which she declined. *Id.* ¶ 18. As a result, Frontier offered her the voucher for future flight travel, which meets the requirements of the bargained for exchange, *i.e.* air travel in exchange for payment. The fact that Plaintiff did not travel on her originally scheduled flight is of no consequence because, pursuant the Contract's terms, "the published schedules, flight times

11

. . . and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage." FAC Ex. A § 18 A. With the offer of the credit, Plaintiff sustained no damages and cannot prove an essential element of a breach of contract. *Tatten*, 912 F. Supp. 2d at 1041 (noting that damages are an element of a breach of contract claim).

### D. Absent Future Injury, Plaintiff Lacks Standing Here to Pursue Injunctive Relief

If the FAC could somehow survive dismissal, Plaintiff cannot pursue injunctive relief as a remedy because her deficient allegations render her without standing. The "requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy." *Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 136056, *6 (E.D.N.Y. Sept. 30, 2016). That is, to "satisfy the threshold requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a likelihood of future injury. *Lyons*, 461 U.S. at 108. The "fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury." *Id.*; *Winsness v. Yocum*, 433 F.3d 727, 735 (10th Cir. 2006). To establish standing to pursue injunctive relief, a plaintiff must demonstrate "a sufficient likelihood" of encountering some future harm. *Lyons*, 461 U.S. at 109, 111 (plaintiff had standing to pursue damages, but not standing to pursue injunctive relief).

Here, Plaintiff's reference to injunctive relief is limited to paragraph 31 of the FAC. The FAC lacks any allegation that Plaintiff will be injured or harmed again in the future. Plaintiff must plead this threshold requirement to pursue injunctive relief, and it is missing from the FAC entirely. Nowhere in the FAC does Plaintiff plead that she will, for instance, travel on Frontier again in the future. Even assuming, *arguendo*, Plaintiff actually was harmed in the manner she alleges he was, the FAC does not allege that such harm will occur again in the future. As a result, Plaintiff lacks

12

standing to seek injunctive relief. Based upon Plaintiff's allegations in the FAC, assuming they can proceed and are proven, Plaintiff's recovery is limited to economic damages only. Consequently, Plaintiff's request for injunctive relief must be dismissed

### E. The Contract Requires Dismissal of Plaintiff's Class Action Claims

The Contract, which Plaintiff references in the FAC and alleges governs the parties' relationship in this case, expressly bars class action lawsuits, providing in § 22 H:

> No Class Action – Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

FAC Ex. A § 22 H. Plaintiff brings this lawsuit under the Contract and does not allege that any part is unenforceable, supporting that this provision requires the dismissal of all class allegations.

Under Colorado law the class action bar is enforceable. When applying Colorado law, courts begin with the presumption that a contract provision is enforceable. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) ("We will enforce the agreement as written unless there is an ambiguity in the language; courts should neither rewrite the agreement nor limit its effect by a strained construction."). Plaintiff does not allege that the Contract contains any ambiguity.

A contract that favors one party more than another does not eliminate the presumption of enforceability. *Thurmon v. Skipton*, 403 P.2d 211, 214 (Colo. 1965) ("Courts will enforce a contract as made, regardless of whether it is an improvident one from the standpoint of one of the parties."); *Sedalia Land Co. v. Robinson Brick & Tile Co.*, 475 P.2d 351, 354 (Colo. Ct. App. 1970) ("The general rule is that, if a party enters into a contract … with sufficient mental capacity to understand it, and not under the influence of fraud, coercion or imposition, the courts will not relieve him of the consequences of his act on the sole ground that the bargain is improvident as to

13

him."). "[T]he party seeking to avoid application of a contractual provision bears the burden of showing that it is unconscionable." *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358, 2009 U.S. Dist. LEXIS 37702, *56 (D. Colo. April 20, 2009) (enforcing contractual class action bar). Plaintiff does not allege that any provision in the Contract is unconscionable.

### 1. Federal Aviation Law Does Not Preclude the Class Action Bar in the Contract

The Contract's class action bar is not prohibited by Federal Aviation Regulations. Specifically, 14 C.F.R. § 253.2 provides that an airline's contract of carriage "applies to all scheduled direct air carrier operations" in interstate air transportation, and "applies to all contracts with passengers, for those operations." A contract of carriage commences when a passenger has purchased the air transportation. 14 C.F.R. § 399.88(a). Airlines are permitted to incorporate contracts of carriage into passengers' tickets or other written instruments, 14 C.F.R. § 253.4(a), and the incorporated terms may include "[c]laims restrictions." 14 C.F.R. § 253.5(b)(2). The Federal Aviation Regulations do not contain any prohibition against class action bar provisions in airlines' contracts of carriage. *See* 14 C.F.R. § 1.1, *et seq.*

### F. The Contract Precludes any Attorney's Fees

Plaintiff is not entitled to recover attorney's fees. She seeks attorney's fees in her Prayer for Relief. The Contract provides that "Frontier is not liable for any indirect, special, or consequential damages arising out of or resulting from transportation provided, delay in transportation, or any failure to provide transportation." FAC Ex. A § 16 A. Further, § 18 provides that the limit of liability (under certain circumstances not present here) is the refund of a ticket when rebooking is not possible. *Id.* § 18 C, E.

"As a general rule, in the absence of any contractual or statutory liability therefor, attorney

fees and expenses of litigation of a plaintiff's claim are not recoverable as an item of damages either in a contract or a tort action." *Lawry v. Palm*, 192 P.3d 550, 568 (Colo. Ct. App. 2008) (internal brackets omitted). "If attorney fees are part of the substance of a lawsuit and are sought as a legitimate consequence of the tort or breach of contract sued upon, they are damages." But, "when a party claims it has incurred attorney fees as foreseeable damages arising from a breach of contract, such fees are considered special damages, which must be pleaded in the complaint pursuant to C.R.C.P. 9(g)." *Id.* at 569. *See also* Fed. R. Civ. P. 9(g) (same). "In the absence of allegations that the pleader is entitled to attorney's fees, therefore, such fees cannot be awarded." *Id.* A complaint's request for attorney fees in a general prayer for relief does not plead special damages. *Id.* Here, the Contract does not provide for attorney's fees and they are not a substantive part of Plaintiff's breach of contract claim. Plaintiff only includes an attorney's fees request in her Prayer for Relief. She fails to plead attorney's fees as special damages under Rule 9(g), and any recovery is precluded by the Contract, rendering the request for attorney's fees unsustainable.

## IV.    CONCLUSION

For the foregoing reasons, Frontier respectfully requests that the Court dismiss the FAC with prejudice pursuant to Rule 12(b)(6) and Rule 12(b)(1).

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By: /s/ Jason D. Melichar

Jason D. Melichar, Esq.

| William J. Katt, Esq. | Patrick J. Kearns, Esq. | David M. Ross, Esq. | R. Joseph Isert, Esq. |
|---|---|---|---|
| 740 N. Plankinton Avenue | 401 West A Street | 1500 K Street, NW | 1225 17th Street |
| Suite 600 | Suite 1900 | Suite 330 | Suite 2750 |
| Milwaukee, WI 53203 | San Diego, CA 92101 | Washington, DC 20005 | Denver, CO 80202 |
| (414) 276-8816 | (619) 321-6200 | (202) 626-7660 | (303) 572-5300 |
| (414) 276-8819 (fax) | (619) 321-6201 (fax) | (202) 626-3606 (fax) | (303) 573-5301 (fax) |
| KattW@wilsonelser.com | KearnsP@wilsonelser.com | RossD@wilsonelser.com | MelicharJ@wilsonelser.com |
| | | | IsertJ@wilsonelser.com |

*Attorneys for Defendant Frontier Airlines, Inc.*

1104054v.1

## CERTIFICATION OF COUNSEL

Frontier's counsel certifies that on June 23, 2020, counsel for Frontier conferred with Plaintiff's counsel regarding the relief sought in this Motion, and did not obtain consent to the relief requested herein.

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.

**Statement Regarding Oral Argument**: Oral argument is requested, to the extent a hearing will assist this Court in evaluating the arguments submitted.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2020, a true and correct copy of the foregoing was filed with the Court and served via CM/ECF on the following:

| | |
|---|---|
| Scott A. Kamber, Esq.<br>Michael J. Aschenbrener, Esq.<br>Kamber Law, LLC<br>201 Milwaukee Street, Suite 200<br>Denver, CO 80206<br>Telephone: (646) 964-9600<br>Facsimile: (212) 202-6364<br>skamber@kamberlaw.com<br>masch@kamberlaw.com<br><br>Max S. Roberts, Esq.<br>Bursor & Fisher, P.A. – New York<br>888 17th Avenue, 3rd Floor<br>New York, NY 10019<br>mroberts@bursor.com<br><br>*Counsel for Plaintiff* | Yeremey O. Krivoshey<br>Bursor & Fisher, P.A.<br>1990 North California Boulevard, Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>ykrivoshey@bursor.com |

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.