## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 20-cv-01153-PAB-KLM

(Consolidated with Civil Actions Nos. 20-cv-01340-RM-RNR; 20-cv-01518-NRN; 20-cv-01689-STV; 20-cv-01751-MEH; and 20-cv-01837-SKC)

In re: FRONTIER AIRLINES LITIGATION

---

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Plaintiffs respectfully submit this opposition to Defendant's Motion to Dismiss.

**I.      Frontier's "No Class Action" Provision Is Unconscionable Under Colorado Law**

In its Motion to Dismiss Consolidated Class Action Complaint ("Motion") (ECF No. 63), Frontier Airlines, Inc. ("Frontier") argues that its Contract of Carriage (the "COC") prohibits Plaintiffs from bringing a class action.[1] Frontier cites only one case applying Colorado law, *Bonanno v. Quizno's Franchise Co., LLC*.[2] Not only is *Bonanno* distinguishable, but its analysis makes clear that Frontier's "No Class Action" provision is unconscionable.

Under Colorado law, contract provisions are not enforceable if they are unconscionable.[3] The Supreme Court of Colorado has identified seven relevant factors to consider when deciding whether a contractual provision is unconscionable, including: (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document; (3) the use of fine print in the portion of the contract containing the provision at issue; (4) the absence of evidence that the provision was

---

[1] Contrary to the requirement of this Court's Practice Standards (Civil Cases) § III.F.2, Frontier did not meet and confer with Plaintiffs prior to the filing of its Motion nor did it follow the required format. The Motion should be denied on these bases alone.

[2] 2009 WL1068744 (D. Colo. Apr. 20, 2009).

[3] *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 968 (Colo. App. 2012).

commercially reasonable or should have been anticipated; (5) substantive fairness; (6) the relationship of the parties; and (7) all the circumstances surrounding the formation of the contract.[4] No one factor predominates in the analysis.[5] If the circumstances demonstrate "'overreaching' by one party that causes a contract provision to unreasonably favor that party… a court should decline to enforce the provision."[6] Also, the question of whether a provision is unconscionable is better decided after targeted discovery.[7]

In *Bonanno*, the plaintiff-franchisees alleged the defendant breached its franchise agreements. The defendant claimed the agreements barred class actions[8] and the plaintiffs argued the bar was unconscionable and unenforceable.[9] The court applied the *Davis* factors and noted that cases addressing the issue (usually in the context of arbitration provisions which are not applicable here) "rel[ied] on wholly inapplicable legal standards or specific state laws that do not translate well to Colorado law."[10] In contrast here, the *Davis* factors support a finding of unconscionability.

First, the COC is a standard form contract offered on a take-it-or-leave-it basis that suggests the "potential for unconscionability and overreaching" because Frontier has unequal bargaining power and Plaintiffs "could not truly negotiate or re-write any provisions of the…agreement."[11]

---

[4] *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991-92 (Colo. 1986).
[5] *Bonanno*, 2009 WL 1068744, at *18 (citing *Davis*).
[6] *Id.*
[7] *See Bonanno v. The Quizno's Franchise Co. LLC*, 2008 WL 638367, at *9 (D. Colo. Mar. 5, 2008) (declining to address whether contract was unconscionable on the pleadings because "[t]here is no evidence in the record at this stage of the litigation with respect to whether or not the franchise agreements are unconscionable."); *see also In re Yahoo! Litig.*, 251 F.R.D. 459, 469 (C.D. Cal. 2008) (observing "whether or not the class action waiver provision is unconscionable depends on the facts and circumstances developed during the course of litigation.").
[8] *Bonanno*, 2009 WL1068744, at *1.
[9] *Id.* at *9.
[10] *Id* at *12.
[11] *Id.* at *18-19; *see Davis*, 712 P.2d 985, 992 (Colo.1986) (recognizing the dangers that standardized contracts pose to consumers and that such contracts are seldom read by consumers).

Second, unlike in *Bonanno* where the franchisees had *ten days* to review the franchise agreement and *were advised to consult a lawyer*,[12] Plaintiffs here had no such opportunities. To the contrary, the process of securing air travel could not be more different than examining a franchise agreement as securing an airline ticket that meets a consumer's cost, timing, and availability needs involves booking a flight where the consumers have no opportunity to familiarize themselves with a long, detailed COC or consult a lawyer. Discovery is also likely to show that when booking online, a time-out feature is commonplace, thus imposing additional time limits and requirements.

Third, the use of fine print here also supports a finding of unconscionability. Frontier buried its "No Class Action" provision in Section ***22*** ("Miscellaneous") on the COC's last page in plain, non-bolded type.[13] While the plaintiffs in *Bonanno* were informed purchasers "making a major investment," Plaintiffs here are far more akin to "uninitiated consumers purchasing a cell phone or signing up for a credit card."[14] Frontier's customers should not be bound by adhesive provisions that are buried in a contract and aimed at undermining their rights to allow Frontier to sidestep liability.[15]

Fourth, there is no evidence the "No Class Action" provision is commercially reasonable or should reasonably have been anticipated by Plaintiffs. Given the low dollar value of the claims here, *i.e.*, airline tickets often cost less than $1,000, compared to the costs of individual litigation, the "No Class Action" provision will effectively prohibit Plaintiffs and customers from pursuing

---

[12] *Id*. at *19.
[13] *See* ECF No. 63 at 3 (noting location of "No Class Action" provision).
[14] *Id*. at *22.
[15] *See Davis*, 712 P.2d at 992 (recognizing the danger of limitations buried in fine print).

their claims.[16] The provision is also substantively unfair, which is "perhaps the most important [factor] to the discussion on unconscionability."[17] The *Bonanno* court found this factor did not favor the plaintiff-franchisees in that case because they feasibly could bring individual lawsuits.[18] In contrast here, individual lawsuits are not a realistic possibility given the cost of airfare versus the extraordinary expense of litigation.

The sixth factor also favors Plaintiffs. *Bonanno* found the defendant "retained the bulk of the bargaining power" and "far greater power in the parties' relationship than any one franchisee"[19] but distinguished the plaintiff-franchisees from ordinary consumers stating "Colorado law does not automatically afford special protection to franchisees in the same manner that it protects consumers."[20] Plaintiffs here are not franchisees but rather "uninitiated consumers."[21]

Finally, the circumstances surrounding the formation of the COC also compel a finding of unconscionability. Frontier leveraged its considerable bargaining power to require Plaintiffs to enter a one-sided, standard form contract of adhesion for air travel. While the COC was intended to define the parties' obligations in the context of that travel, the 90-day travel credit provided by

---

[16] *See Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 646 (10th Cir. 1991) (holding that the defendants' attempted exclusion of consequential damages pursuant to limitations of remedies provision was unconscionable, citing the fourth *Davis* factor).
[17] *Bonanno*, 2009 WL1068744, at*20.
[18] *Id.* at *21 (noting the existence of franchisee lawsuits and that a franchisee who stands to recover $60,000 to $75,000 plus attorneys' fees will likely be able to retain legal representation.); *see also Thibodeau v. Comcast Corp.*, 2006 PA Super 346, ¶ 17, 912 A.2d 874, 884 (2006) ("The average consumer, having limited financial resources and time, cannot individually present minor claims in court…."); *Kinkel v. Cingular Wireless, LLC*, 357 828 N.E.2d 812, 820 (Ill. Ct. App. 2005) (noting in case involving $150, [t]he cost of retaining an attorney and filing an individual claim *either* in court or before an arbitrator would exceed the potential recovery"); *Carnegie v. Household Int'l, Inc*., 376 F.3d 656, 661 (7th Cir. 2004) (concluding that in small dollar cases "the realistic alternative to a class action" is "zero individual suits" because "only a lunatic or a fanatic sues" for small amounts of money).
[19] *Bonanno*, 2009 WL1068744 at *22.
[20] *Id.*
[21] *Id.*

4

Frontier was <u>unusable and worthless</u>. If enforced, the "No Class Action" provision would leave Frontier's customers with no redress. It is unconscionable and unenforceable.

## II.     Frontier Did Not Perform Under The Contract

### 1.   The Contract Requires Frontier to Provide Refunds

Frontier argues that Plaintiffs Rivera-De Leon, Muters, Johnson, Porreca, and Capra (the "Forced-to-Cancel Plaintiffs"), cannot sustain their contract claims because they were forced to cancel their flights when Frontier refused to timely do so, though it ultimately did. Frontier is wrong. Colorado contract law offers Plaintiffs multiple avenues to recovery.

#### a.   Plaintiffs are entitled to rescission and restitution

Because the COVID-19 pandemic made it impossible to travel for the purposes for which the flights were booked, the Forced-to-Cancel Plaintiffs are entitled to rescission and restitution. "The purpose of rescission and restitution is to put the plaintiff in as good a position as it enjoyed before the contract was made by requiring the defendant to restore the value of plaintiff's part performance or reliance."[22] The dual remedies recognize that a "party may discharge a contract when its primary purpose has been destroyed by a supervening event that the parties assumed would not occur."[23] Accordingly, recession and restitution are available under Colorado law where, as here, supervening events frustrate an agreement's underlying purpose[24] or render

---

[22] *Resolution Tr. Corp. v. Fed. Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1504 (10th Cir. 1994) (citing Restatement (Second) of Contracts § 370); *see also* 5 Arthur L. Corbin, *Corbin on Contracts* §§ 996 & 1113 (1964)).

[23] *Id*. at 1503; *Trustees of the Colorado Statewide Iron Workers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc.*, 812 F.2d 1518, 1523 (10th Cir.1987); Restatement of Contracts (Second) § 265.

[24] *Beals v. Tri-B Assocs.*, 644 P.2d 78, 80–81 (Colo. App. 1982) (*citing* Restatement (Second) of Contracts § 265).

performance impossible.[25] Countless courts have recognized restitution as a just and appropriate remedy where a party is unable to obtain the benefits they bargained for due to an intervening event.[26]

COVID-19, and the resulting lockdowns and quarantines imposed, undoubtedly constitute intervening events. As Frontier recognized when it ultimately cancelled many of the Forced-to-Cancel Plaintiffs' flights, flying was prohibitive for most ticketholders. The various restrictions that governments imposed rendered air travel impossible, a conclusion that applies with equal force to the 90-day travel "credits" that Frontier selfishly offered in lieu of refunds.[27] Plaintiffs Muters and Rivera-De Leon were specifically prohibited from traveling by the military.[28] Because the Forced-to-Cancel Plaintiffs booked their flights before the pandemic,[29] the pandemic is an intervening event that frustrated the COC's purpose. Rescission and restitution are warranted.[30]

### b. Frontier impeded Plaintiffs' ability to exercise their contractual rights

---

[25] *Madison Park Townhouses Homeowners Ass'n v. Country Mut. Ins. Co.*, 2015 WL 5221515, at *7 (D. Colo. Sept. 8, 2015) (Impossibility is determined "by whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract."); *City of Littleton v. Employers Fire Ins. Co.*, 453 P.2d 810, 812 (Colo. 1969) (*quoting Ruff v. Yuma Cnty. Transp. Co.*, 690 P.2d 1296, 1298 (Colo. App. 1984) ("[S]ituations that are 'so unforeseeable as to be outside the risks assumed under the contract' may excuse a party's performance because of impossibility or impracticability.")); *see also* Restatement (Second) of Contracts § 261.

[26] *See e.g.*, *Davis v. Borough of Montrose*, 2018 PA Super 228, 194 A.3d 597, 608-09 (2018) (citing Restatement Second of Contracts § 272 in deciding that a party who had performed under a contract that was later terminated due to impracticality could still recover restitution for benefits bestowed); *Forest View Acres Water Dist. v. Colorado State Bd. of Land Comm'rs*, 968 P.2d 168, 173 (Colo. App. 1998) ("Rescission of a contract normally is accompanied by restitution on both sides … [w]hen a contract is determined to be void, rescission, if sought, must follow.").

[27] *See Dowding v. Nationwide Mut. Ins. Co.*, No. 20 C 4118, 2020 WL 5800728, at *3 (N.D. Ill. Sept. 29, 2020) (noting that a 90-day travel voucher is of little worth during pandemic).

[28] Consolidated Class Action Complaint ("CCAC"), ¶¶ 18, 22.

[29] CCAC, ¶¶ 17, 21, 27, 33, 36, 43.

[30] *See Resolution Tr. Corp.*, 25 F.3d at 1503–04 (10th Cir. 1994) (finding restitution and rescission appropriate when an intervening event "made it impossible for a party to fulfill their contractual duty, thus totally frustrating their purpose and warranting discharge of their agreement").

Frontier misapprehends the CCAC in arguing that claims premised on its deceptive and fraudulent conduct sound in tort.[31] The Forced-to-Cancel Plaintiffs allege Frontier breached the COC by bombarding them with emails intended to and which did impede their ability to secure a refund when Frontier invariably cancelled their flights. "Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation or continuance of a right in favor of the other party, or the discharge of a duty by him, is a breach of contract…."[32] Frontier violated this principle. The Forced-to-Cancel Plaintiffs allege, and discovery will show, that Frontier planned to cancel their flights which would entitle them to refunds. Frontier, however, concealed that material information from Plaintiffs and inundated them with coercive and purportedly time-sensitive emails urging them to preemptively cancel their flights in exchange for credits subject to severe and undisclosed restrictions.[33] Frontier did this to ensure it could later argue such customers forfeited their right to refunds.[34] To state a claim for breach arising from interference, "[a]n aggrieved party need only show interference with its reasonable expectations … regarding the fruits of the contract."[35] The Forced-to-Cancel Plaintiffs have alleged just that and their claims should proceed to discovery.[36]

These allegations differ from those in *Rudolph v. United Airlines Holdings, Inc.*, No. 20 C 2142, 2021 WL 534669 (N.D. Ill. Feb. 12, 2021).[37] The *Rudolph* plaintiffs did not contend that United impeded their contractual rights but only that United repudiated the contract.[38] The court

---

[31] Motion, 12-13.
[32] Restatement (First) of Contracts § 315; *see also* 17A Am. Jur. 2d Contracts §§ 675, 703.
[33] CCAC, ¶¶ 87-90, 122-24.
[34] CCAC, ¶¶ 122-24.
[35] *CanPro Investments Ltd. v. United States*, 131 Fed. Cl. 528, 532 (2017).
[36] CCAC, ¶¶ 104-30.
[37] Motion, 7.
[38] *Id*. at *8.

held the plaintiffs failed to plausibly allege repudiation because they could point only to indefinite public announcements about potential changes to bookings.[39] Here, to the contrary, Frontier engaged in a scheme designed to trick consumers into preemptively cancelling flights using "time-sensitive" emails that were anything but.[40] Moreover, Plaintiffs allege Frontier cancelled many of their flights shortly after sending its deceptive emails, further evincing Frontier's wrongful intent. Because Frontier intentionally interfered with their contractual rights, the Forced-to-Cancel Plaintiffs state a claim.

### c. In the alternative, Frontier novated a new contract with the Forced-to-Cancel Plaintiffs that does not impose an expiration date on travel credits

Should the Court find that Frontier's actions successfully compelled the Forced-to-Cancel Plaintiffs into inadvertently forfeiting their contractual rights, Plaintiffs alternatively argue that acceptance of Frontier's "offer" created a new contract that did not impose a 90-day limit on the travel vouchers. A novation is "[t]he extinguishment of an old contract by the substitution of a new contract or obligation…."[41] Novation requires: "1) an existing and valid contract; 2) an agreement to the new contract by all the parties; 3) a new valid contract; and 4) an extinguishment of the old contract by the new one."[42] "Parties need not expressly manifest their intent to accomplish a novation" so long as a new contract supersedes the old by the transformation of essential terms.[43] The Forced-to-Cancel Plaintiffs allege each of these elements.[44]

---

[39] *Id.*

[40] CCAC, ¶¶ 87-91.

[41] *Haan v. Traylor*, 79 P.3d 114, 116 (Colo. App. 2003).

[42] *Ouedraogo v. Downtown Denver Bus. Improvement Dist.*, 2014 WL 559962, at *4 (D. Colo. Feb. 13, 2014) (quoting *Production Credit Ass'n. v. Alamo Ranch Co.*, 989 F.2d 413, 418 (10th Cir.1993)).

[43] *Phoenix Power Partners, L.P. v. Colo, Pub. Util. Comm'n*, 952 P.2d 359, 364 (Colo. 1998).

[44] CCAC, ¶¶ 104-28.

Significantly, Frontier's "offer" did not include a term requiring Plaintiffs to use the travel credit within 90 days.[45] Nor can Frontier credibly claim Plaintiffs agreed to such an undisclosed limitation. Moreover, any interpretation of the new agreement would be subject to the reasonable expectations of the consumer.[46] In the midst of the pandemic, no reasonable consumer would find a 90-day expiration date on a travel credit reasonable or acceptable.[47] By unilaterally imposing an undisclosed 90-day time limit, Frontier breached its "new" contract entitling Plaintiffs to the requested relief.

### 2. Plaintiffs Adequately Allege Frontier Breached its Contract with Plaintiffs Whose Flights It Cancelled by Refusing to Issue Refunds

Section 18 of the COC provides that "[i]f Frontier cannot provide" transportation due to a cancellation or otherwise, "Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation[.]"[48] Significant schedule modifications also require refunds.[49] According to Section 20, Subsection A(4) of the COC, "if no portion of the ticket has been used, the refund amount will be equal to the fare [and other charges]."[50] Plaintiffs Bone, Powell, and Dickstein (the "Cancelled Flight Plaintiffs") plausibly allege Frontier breached these provisions when it cancelled their flights and refused their requests for refunds.[51] Frontier's only defense is that the Cancelled Flight Plaintiffs fail to allege Frontier did not reschedule them on acceptable flights and thereby breach the COC.[52] Frontier's is wrong.

---

[45] CCAC, ¶ 88.
[46] *See Swan Glob. Investments, LLC v. Young*, 2019 WL 5095729, at *8 (D. Colo. Aug. 20, 2019), report and recommendation adopted, 2020 WL 897654 (D. Colo. Feb. 25, 2020).
[47] *See Dowding*, 2020 WL 5800728, at *3 (noting a 90-day travel voucher is of little worth during a nationwide pandemic where travel is being discouraged).
[48] CCAC, ¶ 70.
[49] CCAC, ¶ 71.
[50] CCAC, ¶ 74.
[51] CCAC, ¶¶ 30-32, 36-42.
[52] Motion, 7-9.

As to Plaintiffs Bone and Powell, Frontier does not deny it cancelled their flights but argues Plaintiffs fail to state a claim only because they do not allege Frontier failed to rebook them on new flights.[53] Frontier offers no argument it made such efforts and Plaintiffs are not required to plead a negative.[54] At a minimum, whether §18.C or §18.E of the COC mandated full monetary refunds raises matters of contract interpretation requiring discovery that cannot be resolved at the pleading stage.[55]

Plaintiff Dickstein also states a claim. Frontier cancelled his direct flight from Las Vegas to Orlando but rebooked him on a later flight that had him fly to Chicago, stay overnight, and then fly to Orlando, arriving in Orlando more than 12 hours after the original arrival time and costing him a full day of his trip.[56] By failing to provide a full refund for a significant change in travel plans, Frontier breached the COC, and no reasonable interpretation of the COC would allow Frontier the "discretion" to regard a 12 hour delay as insignificant.[57] Accordingly, the Cancelled Flight Plaintiffs state claims for Frontier's breach of the COC.

### 3. Plaintiffs Sustained Damages Due to Frontier's Breach of Contract

Frontier argues Plaintiffs' claims should be dismissed because its breach of the COC caused no harm.[58] But Frontier has improperly retained Plaintiffs' hard-earned money. Time-limited credits are not refunds as "compensation in kind is worth less than cash of the same nominal

---

[53] *See* COC § 18.C.
[54] *See Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 495 (9th Cir. 2019) (rejecting the requirement of pleading a negative fact); *Drake v. Steak N Shake Operations, Inc.*, No. 4:14-CV-1535-JAR, 2015 WL 4425979, at *2 (E.D. Mo. July 17, 2015) (same) (collecting cases).
[55] *Deschenes Consulting LLC v. Nu Life Mkt. L.L.C.*, 2020 WL 7025142, at *10 (D. Colo. Nov. 30, 2020) (finding inappropriate to determine correct interpretation of contract at pleadings stage).
[56] CCAC, ¶¶ 39-42.
[57] *Id*.
[58] Motion, 9.

value."[59] Plaintiffs are entitled to and expect full refunds. Frontier argues that travel vouchers "meet[] the bargained for exchange[.]" But as courts have recognized, they do not.[60] That is especially true because of the onerous temporal restrictions Frontier sought to impose on the credits "during a nationwide pandemic when air travel was being discouraged[.]"[61]

### 4.   The COC Expressly Incorporates DOT's Notices and Regulations

Under the COC, passengers are entitled to a refund for a changed or cancelled flight. Likewise, for decades, DOT's regulations have required airlines to issue refunds when they cancel or significantly change passenger flights, and the passenger does not accept the airline's alternative offer.[62] The DOT expects airlines to honor their contracts of carriage and refund policies.[63]

Frontier argues DOT regulations requiring refunds are irrelevant as they are not expressly incorporated into the COC.[64] The COC's plain language, however, demonstrates otherwise. Section 20(A)(1) *expressly* incorporates DOT regulations concerning refunds: "[a]ll refunds will be subjected to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and of the country in which the refund is being made."[65] Frontier's COC thus differs considerably from those involved in *Rudolph* and other cases. Frontier's COC does not "vague[ly]" reference other laws but instead, expressly identifies those laws pertaining to *refunds*. By specifically identifying the *types* of laws that govern its contractual obligations, the

---

[59] *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006).

[60] *See*, *e.g.*, *Roes v. SFBSC Management*, LLC, 944 F.3d 1035, 1053 (9th Cir. 2019) (noting vouchers have a high rate of attrition, and therefore are not equivalent to cash).

[61] *Dowding*, 2020 WL 5800728, at *3.

[62] *Enhancing Airline Passenger Protections*, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011).

[63] *See* Second Enforcement Notice at fn. 5-6. Under 49 U.S.C. § 41712, the DOT is authorized to investigate whether an air carrier engaged in an unfair or deceptive practice. A ticket agent's failure or refusal to make proper refunds promptly constitutes such a practice. *See* 14 CFR § 399.80(l).

[64] Motion, 10.

[65] CCAC, ¶ 113.

regulations Frontier "maintains are external to the [C]ontract are expressly incorporated into it."[66] And Section 22(A) affirms that Frontier's COC incorporates passengers' rights to refunds as required under applicable laws, regulations, rules, or security directives, applicable to passenger refunds.

Equally unavailing is Frontier's claim that even if the DOT's regulations did apply, it need not issue refunds because its COC does not require them. Even if DOT regulations conflicted with the COC (and they do not), the former would govern: the COC explicitly states that "[i]n all cases, this Contract of Carriage will be subordinate to any applicable law."[67] The DOT regulations clearly direct Frontier to provide refunds for cancelled flights. Therefore, to the extent they conflict with the COC, pursuant to Section 22(A), the DOT regulations control.

**5. Plaintiffs' Breach of Contract Claim is Not Preempted**

The Airline Deregulation Act of 1978's ("ADA") preemption provision states "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation."[68] However, as Frontier concedes, under the Supreme Court's *Wolens* exception, the ADA does not preempt claims against airlines arising from breaches of their contracts of carriage.[69] The ADA also does not preempt contractual obligations airlines voluntarily undertake—even if they relate to prices, routes, or services.[70] Because Plaintiffs' claims arise from Frontier's breach of its own "self-

---

[66] *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 566 (N.D. Tex. 2005) (holding the airline's contract expressly incorporated certain federal privacy laws because "American agreed to be bound to its privacy policy, except as required by law.").

[67] CCAC, ¶ 114.

[68] 49 U.S.C. § 41713(b)(1).

[69] *See* Motion, 12; *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995) ("the ADA permits state-law based court adjudication of routine breach-of-contract claims").

[70] *See Wolens*, 513 U.S. at 232-33 (1995); *see also Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1064 (9th Cir. 2017) (determining a breach of contract claim is not preempted relying upon

imposed undertakings,"[71] the ADA does not preempt their claims.[72]

Frontier wrongly argues that Plaintiffs "are attempting to enlarge the obligations voluntarily undertaken by the parties through the contract by introducing external documents[,]" including DOT notices and regulations.[73] But unlike in Frontier's cited cases,[74] Plaintiffs here are not seeking to add to Frontier's COC, but merely to enforce its express terms. Plaintiffs allege Frontier breached the COC, including DOT regulations it expressly incorporated by reference, when it refused to refund passengers for changed or cancelled flights. As in *Wolens*, Plaintiffs seek recovery "solely for the airline's breach of its own, self-imposed undertakings," in this case the COC.[75] Therefore, Plaintiffs' claims are not preempted.[76]

## III.    Plaintiffs Have Standing To Pursue Injunctive Relief

---

the Restatement (Second) of Contracts); *Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 285 (2d Cir. 2019) (determining routine contract claims may proceed, which necessarily requires employing tools of state-law contractual interpretation).

[71] *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d at 565.

[72] *See Ward v. Am. Airlines, Inc.*, 2020 WL 8415080, at *12 (N.D. Tex. Nov. 2, 2020) (collecting cases) (holding that ADA does not preempt breach of contract claim).

[73] *See* Motion, 12. Paradoxically, Frontier argues that the DOT notices and regulations that it previously stated are irrelevant to Plaintiffs' breach of contract claims are not only relevant now but bar the *Wolens* exception.

[74] In *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 253 (S.D.N.Y. 2004), the court held that the ADA preempted the plaintiff's breach of implied covenant of good faith and fair dealing claim because it "seeks to add to the terms of [the defendant's] contractual obligations." Similarly, in *Schneberger v. Air Evac Ems, Inc.*, 749 F. App'x 670, 678 (10th Cir. 2018), the court upheld ADA-preemption when the plaintiffs attempted to insert price-terms into their contracts. In that case, the Court noted that if "Plaintiffs were simply attempting to enforce a specific term of the contract, their claims could proceed." *Id*. at 674. The Court did not hold that the plaintiffs' claims were only "masquerading" as breach of contract claims. *See id*.

[75] *Wolens*, 513 U.S. at 220.

[76] Frontier's other citation is inapplicable. In *Nw., Inc. v. Ginsberg*, the Supreme Court dealt with implied covenant claims not at issue here, and recognized plaintiffs' breach of contract claims may well have survived any ADA preemption had the plaintiff appealed them. 134 S. Ct. 1422, 1426 (2014) ("Finally, respondent might have been able to vindicate his claim of ill treatment by Northwest had he appealed his breach of contract claim."). *Ginsberg* is thus distinguishable.

Frontier argues Plaintiffs cannot pursue injunctive relief because they fail to allege risk of future injury.[77] But Frontier concedes Plaintiffs allege they may need to fly Frontier in the future.[78] When passengers book travel with Frontier they become bound by the COC (except to the extent provisions are unconscionable), which governs the airline's obligations.[79] Alleging a routine practice and formal policy is sufficient for a plaintiff who has been injured by that practice, to have Article III standing to seek prospective relief to fix it.[80] Frontier is obligated to provide refunds when it cancels flights.[81] Its failure to do so here combined with its continuing practice of denying refunds creates a high likelihood of future injury.

## IV.    Plaintiffs Are Not Limited To Compensatory Damages

Frontier argues Plaintiffs are only permitted to recover compensatory damages.[82] Under Colorado law, however, punitive damages are available for breach of contract once a plaintiff proves they are entitled to compensatory damages.[83] Plaintiffs establish their entitlement to compensatory damages above, and Frontier's conduct is alleged to be part of a deliberate and deceptive scheme to deprive Plaintiffs of their contractually promised refunds.[84] Frontier's contention that the COC bars Plaintiffs from recovering indirect, special, or consequential damages should be rejected as unconscionable for the same reasons set forth in Section I above.[85]

---

[77] Motion, 13.

[78] Motion, 14 (citing CCAC, ¶ 130). Further, Frontier is a low-cost carrier that Plaintiffs will likely need to fly on again in the future because of cost or flight and travel schedules. Plaintiffs believe such an allegation is unnecessary to have standing, but request leave to amend to include this allegation should the Court deem it necessary.

[79] CCAC, ¶ 117.

[80] *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 159 (E.D.N.Y. 2018); *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 345 (2d Cir. 1998).

[81] CCAC, ¶ 70.

[82] Motion, 14.

[83] *Nunn v. Mid-Century Ins. Co.*, 215 P.3d 1196, 1200 (Colo. App. 2008).

[84] *See* Section I, *supra*; *see also Lutz Farms*, 948 F.2d at 646.

[85] *See, e.g.*, *Bonanno*, 2008 WL 638367, at *9.

## VI.     All Plaintiffs Are Properly Included In The Consolidated Class Action Complaint

Frontier argues that five Plaintiffs should be dismissed because they were first included in the CCAC. The CCAC is not merely an administrative device but superseded all pending complaints.[86] A superseding consolidated complaint is tested on its own merits without regard to earlier pleadings.[87] When plaintiffs file a new, legally operative complaint, they may include new plaintiffs as is common in direct-file complaints in multidistrict litigation.[88] The CCAC is the only legally operative complaint in this litigation and should be assessed on its own merits, including the new plaintiffs. In Frontier's view, these Plaintiffs should file their own complaints, and Frontier should file another motion to consolidate, after which the plaintiffs would file the same CCAC. Frontier fails to identify any tangible benefit from this process because there is none.[89]

## VII.     Conclusion

WHEREFORE, the Court should deny Frontier's Motion in its entirety.

Dated: March 19, 2021                     Respectfully submitted,

| | | |
|---|---|---|
| */s/* Jamie Hubbard | */s/* Bryan L. Clobes | */s/* Shanon J. Carson |
| Kathryn J. Stimson | Bryan L. Clobes | Shanon J. Carson |
| Jamie Hubbard | CAFFERTY CLOBES | BERGER MONTAGUE PC |
| STIMSON STANCIL | MERIWETHER & | 1818 Market Street |
| LABRANCHE HUBBARD, LLC | SPRENGEL LLP | Suite 3600 |
| 1652 Downing Street | 205 N. Monroe St. | Philadelphia, PA 19103 |
| Denver, CO 80218 | Media, PA 19063 | Tel: 215-875-3000 |
| Tel: 720-689-8909 | Tel: 215-864-2800 | scarson@bm.net |
| stimson@sslhlaw.com | bclobes@caffertyclobes.com | *Interim Co-Lead Counsel* |
| hubbard@sslhlaw.com | *Interim Co-Lead Counsel* | |
| *Interim Liaison Counsel* | | |

---

[86] Motion, 1 n.1 (citing ECF No. 57).

[87] *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590-91 (6th Cir. 2013).

[88] *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 379 F. Supp. 3d 1333, 1340 (S.D. Fla. 2019).

[89] *Cf. Berdat v. INVESCO Funds Grp., Inc.*, No. CV H-04-2555, 2005 WL 8167469, at *2 (S.D. Tex. Dec. 8, 2005) (noting frustration of "goals of judicial economy and efficiency by requiring the substitute Plaintiffs to file suit separately and then seek consolidation").

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March 2021, a true and correct copy of the foregoing *Plaintiffs' Opposition to Defendant's Motion to Dismiss* was filed with the Clerk of Court via the CM/ECF filing system, which will send notification of such filing to all CM/ECF registrant(s) who have entered an appearance in this case.

*s/ Brenda Rodriguez*
Brenda Rodriguez
