UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
STEPHEN IDE, KAREN STEELE-CLARKE, DONALD :
DOMINIQUE, JR., and PHILIP TENN, :
:
                    Plaintiffs, :      20-CV-3542 (JMF)
:
       -v- :      <u>OPINION AND ORDER</u>
:
BRITISH AIRWAYS PLC, :
:
                    Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In the spring of 2020, the COVID-19 pandemic brought travel around the world to a near halt, with devastating consequences for the airline industry. Most, if not all, airlines responded by cancelling flights en masse. Not surprisingly perhaps, litigation has followed, with cases filed against virtually every airline by customers alleging breach of contract and other claims. This case, against British Airways PLC, is among them. Four Plaintiffs whose British Airways flights were canceled bring claims on behalf of a putative class, alleging that British Airways breached the contract governing their tickets by failing to provide them with their preferred remedy: a refund. British Airways now moves to compel arbitration of one Plaintiff's claims and to dismiss the claims of the other three Plaintiffs. ECF No. 31. For reasons that follow, its motion to compel arbitration is GRANTED as unopposed, and its motion to dismiss is GRANTED in part and DENIED in part. In particular, the Court concludes that Plaintiffs state a plausible breach-of-contract claim under New York law and that their claim is not preempted by federal law, but their requests for relief other than compensatory damages must be stricken.

## BACKGROUND

The following facts, taken from the First Amended Complaint ("Complaint") and documents referenced therein, are assumed to be true for the purposes of this motion. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 513 (2d Cir. 2013).

### A. The General Conditions of Carriage

The General Conditions of Carriage ("COC") applies to all customers who buy tickets on British Airways flights and to all flights that British Airways operates. ECF No. 30 ("Compl."), ¶¶ 44-45; *see also* ECF No. 33-7 ("COC"), at 2, § 2(a). To the extent relevant here, the COC states that if British Airways "cancel[s] a flight," the customer "can choose one of . . . three remedies." COC § 9(b)(3). *First*, British Airways "will," at no additional charge, "carry [the customer] as soon as [it] can to the destination shown on [the customer's] ticket on another of [British Airways's] scheduled services on which a seat is available in the class of service for which [the customer] ha[s] paid the fare." *Id.* *Second*, British Airways "will," also at no additional charge, "carry [the customer] to the destination shown on [the customer's] ticket in the class of service for which [the customer] ha[s] paid the fare at a later date at [the customer's] convenience and within the validity period of [the customer's] ticket on another of [British Airways's] scheduled services on which a seat is available." *Id.* Or *third*, British Airways "will give or obtain for [the customer] an involuntary fare refund," *id.*, defined as a refund "equal to the fare and any carrier imposed charges and surcharges, and taxes, fees and charges" the customer has paid. *Id.* §§ 1, 10(b)(2).

### B. The COVID-19 Pandemic

In March 2020, air travel came to a near standstill as part of the effort to slow the spread of COVID-19. Compl. ¶¶ 50-53. In response, British Airways made significant reductions to its flight schedules and began cancelling flights "*en masse*." *Id.* ¶¶ 53-54; *see also id.* ¶ 56. "To

limit the number of refunds [British Airways] would be required to issue" pursuant to the COC, "no later than mid-March 2020, [British Airways] modified its website to mislead its customers into accepting vouchers instead of the refunds it was contractually required to make available." *Id*. ¶ 58. In particular, customers were shown a page with a button labeled "[c]ancel and refund flight(s)," but customers who clicked on that button were taken to an application for a future travel voucher instead. *Id.* ¶¶ 59-61. Media outlets reported that, due to the COVID-19 pandemic, British Airways removed the option for submitting refund claims on its website altogether, *id.* ¶¶ 67-68, and that the "only way to receive a refund" was to call the airline by telephone, *id.* ¶ 65. Making matters worse, however, calling was "unavailable" for many customers because the airline "disconnect[ed] a large percentage of calls due to heavy call volume or other reasons." *Id.* When calls did connect, customers "often" had to "wait for hours on hold before speaking to a live customer service representative," which was "the only way to receive a refund" since British Airways did not implement an automated refund procedure. *Id.*

**C.  The Named Plaintiffs**

The four named Plaintiffs in this case each purchased roundtrip passage on British Airways flights scheduled for the spring and summer of 2020. Each received notice that one or both of the tickets had been cancelled. Each now seeks a refund.

*First*, Stephen Ide, a Massachusetts citizen, purchased a roundtrip ticket through the British Airways website to travel from Boston to London on March 25, 2020, and back on April 5, 2020. *Id.* ¶¶ 9-10. On March 18, 2020, British Airways notified Ide by email that his flight had been cancelled. *Id.* ¶ 11. Two days later, Ide called the British Airways customer service line "to request a refund," but he was "unable to connect with a customer service representative." *Id.* ¶ 12. On March 22, 2020, Ide searched online in an effort to find out how to get a refund, but

3

he was able to find information only about obtaining a travel voucher. *Id.* ¶ 13. He ultimately requested a voucher because it was "the only relief available." *Id.*

On March 24 and 25, 2020, Ide called British Airways four times to request that the voucher be converted into a refund, but he was disconnected each time. *Id.* ¶ 14. The next day, he received his voucher by email; it stated that the voucher could be used as "part payment" towards a future booking and that it was redeemable only for flights taken within twelve months of his original booking's first flight. *Id.* ¶ 15. On April 21, 2020, Ide called British Airways again and spoke with a customer service agent who "denied his request for a refund" because he had already been issued a voucher. *Id.* ¶ 17. The agent informed Ide that he could "escalate his complaint by contacting Customer Relations and filing a complaint," but Ide was unable to do so because the "website would not permit him to file his complaint." *Id.*

*Second*, Karen Steele-Clarke, a Georgia citizen, purchased a roundtrip ticket through the British Airways website to travel between New York and London. *Id.* ¶¶ 18-19. On May 4, 2020, approximately two months before Steele-Clarke's scheduled departure, British Airways informed her by email that her outbound flight had been cancelled. *Id.* ¶ 20. She "promptly" filled out a form on the British Airways website that "she believed would allow her to request a refund," but on May 7, 2020, British Airways emailed her a voucher instead. *Id.* ¶¶ 21-22. She "promptly" responded, explaining that she wanted a refund and had not intended to request a voucher; she made similar requests through other "channels," including direct messages on Twitter. *Id.* ¶¶ 23-24. British Airways "refused her request[s]," but it did end up refunding her "the extra $114 that she [had] paid for seat selection." *Id.* ¶ 24.

*Third*, Philip Tenn, a Florida citizen, purchased a roundtrip ticket through the British Airways website to travel from Tampa to London on March 15, 2020, and back on March 24, 2020. *Id.* ¶¶ 32-33. British Airways notified Tenn by email that his "return flight from London

4

was canceled." *Id.* ¶ 34. Tenn filled out "the voucher form" on the British Airways website, but before he received a voucher, he contacted the airline by telephone and email to request a refund. *Id.* ¶ 35. British Airways "refused to provide him a refund." *Id.* Tenn contacted British Airways "numerous times" thereafter, but British Airways has never given him a refund. *Id.* ¶ 36. Nor has he received a voucher. *Id.* ¶ 37.

*Finally*, Donald Dominique, Jr., also a Florida citizen, purchased a roundtrip ticket to travel on British Airways from Miami to Paris on March 16, 2020, returning on March 20, 2020. *Id.* ¶¶ 25-26. Unlike the other named Plaintiffs, Dominique purchased his tickets through Expedia, a third-party travel website. *Id.* ¶ 26. His return flight was cancelled, and — wanting a refund — he called both British Airways and Expedia "several times." *Id.* ¶¶ 28, 31. He was never able to reach a British Airways representative. *Id.* ¶ 29. Finally, in early April 2020, Dominique spoke with an Expedia customer service representative who said that he could not obtain a refund for his canceled flight. *Id.* ¶ 30. The representative explained that British Airways had only authorized Expedia to give vouchers. *Id.* Dominique never received either a voucher or a refund. *Id.* ¶ 31.

## MOTION TO COMPEL ARBITRATION

British Airways's first motion — to compel arbitration of Dominique's claims — requires only brief discussion because it is uncontested. *See* ECF No. 35 ("Pls.' Opp'n"), at 22. That is for good reason. Alone among the named Plaintiffs, Dominique purchased his ticket through Expedia and, in doing so, agreed to arbitrate on an individual basis "[a]ny and all Claims," including "any Claims . . . against . . . travel suppliers or any companies offering products or services" through Expedia, such as British Airways. ECF No. 33-10, at 3; *see*

5

Exhibit A

Compl. ¶ 26.[1] The only question is whether, pending the arbitration, Dominique's claims should be dismissed with prejudice, as British Airways argues in its initial memorandum of law, *see* ECF No. 32 ("Def.'s Br."), at 2, or stayed, as Dominique argues, *see* Pls.' Opp'n 22. Dominique has the better of that argument — and, indeed, British Airways abandons the point in its reply memorandum of law. *See, e.g.*, *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested"); *Torre v. Charter Commc'ns, Inc.*, No. 19-CV-5708 (JMF), 2020 WL 1048933, at *2 (S.D.N.Y. Mar. 4, 2020) (granting a motion to compel arbitration with respect to one of several plaintiffs and staying only as to that one plaintiff). Accordingly, the motion to compel arbitration of Dominique's claims is GRANTED and the case is stayed as to him.

## MOTION TO DISMISS

That leaves the motion to dismiss the claims of Ide, Steele-Clarke, and Tenn (together, the "Non-Arbitration Plaintiffs") pursuant to Rule 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court is limited to "a narrow universe of materials." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In particular, a court may consider only: (1) "the factual allegations in the . . . complaint, which are accepted as true"; (2) "documents attached to the complaint as an exhibit or incorporated in it by reference"; (3) "matters of which judicial notice may be taken"; and (4) "documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d Cir. 2014) (per curiam) (cleaned up). To survive a Rule 12(b)(6) motion, a plaintiff must plead enough facts "to

---

[1] In evaluating British Airway's motion to compel arbitration, the Court "must apply the summary judgment standard, and thus may grant the motion only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." *Zimmerman v. UBS AG*, No. 17-CV-4503 (JMF), 2018 WL 4054860, at *2 (S.D.N.Y. Aug. 24, 2018) (internal quotation marks omitted). Thus, the Court may look beyond the four corners of the Complaint.

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege enough facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

British Airways argues that the Non-Arbitration Plaintiffs fail to state a breach-of-contract claim under New York law and that, to the extent that any of them does, the claim is preempted by the Airline Deregulation Act of 1978 ("ADA"), as amended, 49 U.S.C. § 41713. *See* Def.'s Br. 2-3, 14-23; ECF No. 38 ("Defs.' Reply"), at 2-8, 10 n.7.[2] In the alternative, it moves to strike Plaintiffs' requests for statutory, punitive, and exemplary damages and for injunctive relief. Def.'s Br. 3, 24-25; Def.'s Reply 9-10. The Court will address each argument in turn.

**A. Breach of Contract**

The primary question presented is whether the Non-Arbitration Plaintiffs state a plausible contract claim and, if they do, whether it is preempted by the ADA. Before addressing that question, however, the Court briefly addresses one argument unique to Tenn.

---

[2] Plaintiffs do not address choice of law, except to argue that it is premature to decide the law that applies to the claims of the "putative class." Pls.' Opp'n 24. Given that silence and given that the question here is the sufficiency of the Non-Arbitration Plaintiffs' claims, not the sufficiency of other putative class members' claims, the Court applies New York law to the Non-Arbitration Plaintiffs' contract claims. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013) ("[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs.").

Exhibit A

1. **Tenn's Claim**

British Airways argues that Tenn's claim should be dismissed because his ticket was cancelled due to a failure to appear for his outgoing flight. Def.'s Br. 14. By failing to appear, the argument goes, Tenn rendered both his departing and returning tickets without value, thus permitting British Airways to cancel his return flight, with no obligation to refund the price of the ticket, pursuant to the terms of the COC. COC § 3(c)(5)-(6), (10); Def.'s Br. 14-15; Def.'s Reply 2. The problem with this argument, however, is that it depends on a document that the Court may not consider at this stage of the litigation: Tenn's Passenger Name Record ("PNR"), which British Airways submits as an exhibit to its motion. *See* ECF No. 33-11. The Complaint makes no reference to Tenn's PNR (or its contents), and the document is not within the narrow universe of documents beyond the Complaint that the Court may consider on a motion to dismiss. *Goel*, 820 F.3d at 559; *see, e.g.*, *Herrera v. Cathay Pac. Airways Ltd.*, No. 20-CV-3019 (JCS), 2021 WL 673448, at *5 (N.D. Cal. Feb. 21, 2021) (declining to take judicial notice of PNRs and ticket information); *Ward v. Am. Airlines, Inc.*, — F. Supp. 3d —, No. 4:20-CV-371 (O), 2020 WL 8415080, at *12 (N.D. Tex. Nov. 2, 2020) (declining to consider "ticket records" submitted with a motion to dismiss). The authority British Airways cites in arguing otherwise, *see* Defs.' Reply 2 n.1, is inapposite. *See Diveroli v. Am. Airlines, Inc.*, No. 19-CV-23251 (BB), 2019 WL 5697198, at *6-7 (S.D. Fla. Nov. 4, 2019) (considering a PNR for purposes of subject-matter jurisdiction — namely, in evaluating whether the plaintiff had standing to bring the claim); *Cattaneo v. Am. Airlines, Inc.*, No. 15-CV-1748 (BLF), 2015 WL 5610017, at *1 n.2 (N.D. Cal. Sept. 24, 2015) (considering the plaintiff's itinerary "under the incorporation by

8

reference doctrine"). Accordingly, the Court may not dismiss Tenn's claim on the basis of his PNR; instead, it will evaluate his claim with the claims of the other Non-Arbitration Plaintiffs.[3]

### 2. Failure to State a Claim

Under New York law, there are four elements of a cause of action for breach of contract: (1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach. *See, e.g., Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320 (S.D.N.Y. 2012). Here, there is no dispute that the allegations in the Complaint satisfy the first two elements. But British Airways contends that the Non-Arbitration Plaintiffs fail to plausibly allege a breach and resulting damages. *See* Def.'s Br. 14-18 & n.4.

British Airways's latter argument — that the Non-Arbitration Plaintiffs fail to plausibly allege any damages arising from a breach — can be swiftly rejected. For starters, British Airways relegates the argument to a single footnote, *see id.* at 18 n.4, which is "inadequate" to raise the issue, *New York v. Wheeler*, No. 19-CV-3287 (JMF), 2019 WL 3337996, at *2 (S.D.N.Y. July 25, 2019); *see, e.g.*, *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018) (stating that an argument "relegated to a footnote . . . does not suffice to raise [an] issue" and citing cases). But even if it were adequate, the argument plainly fails. As discussed in more detail below, the gravamen of the Non-Arbitration Plaintiffs' claim is that they were entitled to full refunds under the COC, but were offered only travel vouchers and that the

---

[3] Rule 12(d) of the Federal Rules of Civil Procedure allows a court to treat a motion under Rule 12(b)(6) as a motion for summary judgment if matters outside the pleadings are presented and all parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." But British Airways does not request that its motion with respect to Tenn be converted pursuant to Rule 12(d) and there is no basis to do so. Among other things, Tenn suggests that discovery will reveal that he contacted British Airways before his outbound flight departed. *See* Pls.' Opp'n 9; *see also Moore v. City of New York*, No. 18-CV-496 (JPO), 2019 WL 2616195, at *1 n.2 (S.D.N.Y. June 26, 2019) ("[T]he Court declines to convert the instant motion into one for summary judgment since discovery has not yet commenced." (internal quotation marks omitted)).

vouchers came with various restrictions. It is well-recognized that "compensation in kind is worth less than cash of the same nominal value." *In re Mex. Money Transfer*, 267 F.3d 743, 748 (7th Cir. 2001). It follows that the Non-Arbitration Plaintiffs plausibly allege damages resulting from British Airways's alleged breach of the COC and that their claims cannot be dismissed on that basis.

Whether the Non-Arbitration Plaintiffs plausibly allege a breach in the first instance is a closer question, but the Court concludes that they do. In fact, the Non-Arbitration Plaintiffs allege two plausible theories of how British Airways breached the COC.[4] First, they plausibly allege that the airline failed to fulfill its obligation to offer one of the three remedies listed in the COC. Pls.' Opp'n 10-12. Section 9(b)(3) of the COC unambiguously provides that if British Airways cancels a flight, as it allegedly did here, the customer "can choose" one of three remedies: immediate rescheduling, rescheduling at the customer's convenience, or a refund. COC § 9(b)(3). Travel vouchers are not among the options. British Airways argues that the travel vouchers given to the Non-Arbitration Plaintiffs are "essentially" equivalent to the second remedy offered in Section 9(b)(3) — namely, rescheduling at the customer's convenience.

---

[4] In their Complaint, the Non-Arbitration Plaintiffs invoke an April 3, 2020 notice issued by the United States Department of Transportation ("DOT"), which stated that passengers on carriers such as British Airways "should be refunded promptly when their scheduled flights are cancelled or significantly delayed." Compl. ¶ 54 (internal quotation marks omitted). The Non-Arbitration Plaintiffs argue that their reading of the COC "conforms with" the DOT notice and other DOT guidance. Pls.' Opp'n 13; *see also id.* at 3 (describing the COC as "consistent with" DOT policy); Compl. ¶ 5 (describing the COC as "align[ing] with" DOT guidance). At bottom, however, the references to the DOT notice appear to be little more than atmospheric. That is, although British Airways argues that the DOT's guidance cannot "support" a breach-of-contract claim, Def.'s Br. 18-20, the Court does not read the Complaint to allege such a claim. To the extent that it does, the Non-Arbitration Plaintiffs abandoned it by failing to respond to British Airways's arguments for dismissal. *See, e.g.*, *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC,* No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . , a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

10

Defs.' Br. 4, 15.[5] But the "essential" equivalence of the two remedies is disputed — and, more to the point for present purposes, plausibly disputable. Ide alleges, for example, that the voucher British Airways provided him stated that it could be used only as "*part* payment towards a future booking" and that the voucher had to "be redeemed for travel on flights taken within 12 months from the date of the first flight in [Ide's] original booking." Compl. ¶ 15 (emphasis added) (internal quotation marks omitted). Along similar lines, an archived copy of British Airways's website from May 3, 2020 (submitted here by the airline itself), announced that customers "due to travel between now and 31 July 2020 . . . can claim a voucher to the value of [their] booking[s], valid for travel *until 30 April 2022*." ECF No. 33-4, at 4 (emphasis added).[6] Thus, the Non-Arbitration Plaintiffs plausibly allege that they received a "remedy" that was worth less than the options to which they were entitled under Section 9(b)(3) of the COC.[7] *Cf. Synfuel*

---

[5] British Airways does not argue that, by requesting the vouchers, the Non-Arbitration Plaintiffs relieved British Airways from offering the remedies under Section 9(b)(3). That is probably for good reason. Although "parties generally may modify a contract by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel," excusing performance on that basis is an affirmative defense. *Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 28-29 (2d Cir. 2018) (summary order) (internal quotation marks omitted). Thus, the Court could dismiss on that basis only if the defense were clear on the face of the Complaint, *see Galin v. Hamada*, No. 15-CV-6992 (JMF), 2016 WL 2733132, at *2 (S.D.N.Y. May 10, 2016) (citing cases), which it is not, *see, e.g.*, *Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 718 (2d Dep't 1980) (explaining that the defense requires "proof of each element requisite to the formulation of a contract"); *see also, e.g.*, *Alentino, Ltd. v. Chenson Enters., Inc.*, 938 F.2d 26, 28 (2d Cir. 1991) (per curiam) (noting that the defendant "has the burden of presenting [an] accord-and-satisfaction defense, including all essential elements" like "the existence of an agreement between the parties which settles a dispute between them and its performance of that agreement").

[6] The Court may and does take judicial notice of this document as "information publicly announced on a party's website" where "the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (internal quotation marks omitted).

[7] Under Section 9(b)(3) of the COC, the date selected by a customer availing herself of the second option does have to be "within the validity period of [the] ticket," which is defined as "the period for which [the] ticket is valid for travel." COC §§ 1, 9(b)(3). The COC provides that the validity period may be defined by the ticket itself or by provisions laid out in Section 3(b) of

11

*Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("[C]ompensation in kind is worth less than cash of the same nominal value." (internal quotation marks omitted)); *In re Mex. Money Transfer Litig.*, 267 F.3d at 748 (noting that the value of vouchers "can be offset (in whole or in part) by raising prices during the period before the [vouchers] expire").

Second, the Non-Arbitration Plaintiffs plausibly allege that British Airways breached the COC by preventing them from choosing their preferred remedy under Section 9(b)(3), namely, a refund of their ticket price. *See, e.g.*, Compl. ¶¶ 16, 23, 38, 90; Pls.' Opp'n 13-14. Among other things, the Non-Arbitration Plaintiffs allege that British Airways modified its website so that calling the airline became "[t]he only way to receive a refund." Compl. ¶¶ 58, 64-65. Moreover, "a large percentage of calls" were disconnected "due to heavy call volume or other reasons," and when calls did connect, customers were "often" made to "wait for hours on hold" before they were able to speak to a customer service representative to request a refund. *Id.* ¶ 65. For example, the Complaint alleges that Ide called British Airways five times and was disconnected four of those times; on a fifth try, he finally spoke to a customer service agent who ultimately denied his request for a refund because he had already been issued a voucher. *Id.* ¶¶ 14, 17. Meanwhile, Steele-Clarke attempted to seek a refund by email and Twitter direct messages, but British Airways refused her request. *Id.* ¶¶ 23-24. And Tenn attempted to contact British airways by phone and email "numerous times," but was also unsuccessful. *Id.* ¶¶ 35-36. Taken together, these allegations suffice to state a claim of breach on the theory that British Airways "unlawfully interfered" with the Non-Arbitration Plaintiffs' ability to select their preferred

---

the COC. COC § 3(b)(1). The parties do not address what the relevant validity period was for the Non-Arbitration Plaintiffs' tickets, let alone how that period bears on the plausibility of their breach claims.

12

Case No. 1:20-cv-01153-PAB-KLM   Document 70-1   filed 03/31/21   USDC Colorado   pg 13
of 19
Case 1:20-cv-03542-JMF   Document 53   Filed 03/26/21   Page 13 of 19

remedy and "prevented" them from exercising their options under Section 9(b)(3). Pls.' Opp'n 13-14.

In arguing otherwise, British Airways contends that it had no obligation to provide a refund to the Non-Arbitration Plaintiffs because they "chose not to call for a refund." Def.'s Br. 15-16; *see* Def.'s Reply 3. In essence, that is, British Airways contends that the Non-Arbitration Plaintiffs failed to satisfy a condition precedent to its obligation to provide a refund, let alone one of the other remedies set forth in Section 9(b)(3). *See, e.g.*, *Ballard v. Parkstone Energy, LLC*, 522 F. Supp. 2d 695, 710 (S.D.N.Y. 2007) ("A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." (internal quotation marks omitted)). Under well-established principles of contract law, however, "a party may not avoid performance of a contractual duty by preventing the occurrence of a condition precedent (the so-called 'prevention doctrine')." *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 528 (2d Cir. 2005); *see MBIA Ins. Corp. v. Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, No. 09-CV-10093 (RJS), 2011 WL 1197634, at *14 (S.D.N.Y. Mar. 25, 2011) (Sullivan, J.) ("It is well established that a party to a contract cannot rely on the failure of another to perform a condition precedent where the party itself has frustrated or prevented the occurrence of the condition." (cleaned up)); *see also Bus. Incentives Co. v. Sony Corp. of Am.*, 397 F. Supp. 63, 70 n.8 (S.D.N.Y. 1975) ("[F]rustration of the happening of a condition precedent may be a breach of contract in and of itself."); RESTATEMENT (FIRST) OF CONTRACTS § 315(1) (AM. LAW INST. 1932) ("Prevention or hindrance by a party to a contract of any occurrence or performance requisite under the contract for the creation of a right in favor of the other party . . . is a breach of contract . . . ."). The Non-Arbitration Plaintiffs plausibly allege exactly that here: that by removing refund claim forms

13

from its website and channeling their refund requests through overburdened and inadequate call centers, British Airways frustrated their ability to secure refunds. Compl. ¶¶ 58, 64-68.[8]

In short, applying well-established principles of contract law, the Court concludes that the Non-Arbitration Plaintiffs bring a plausible breach-of-contract claim based on British Airways's failure to provide them with refunds. Notably, that conclusion is consistent with the conclusions of other courts over the last year in analogous cases — that is, cases brought against other airlines based on their cancellation of flights due to COVID-19. *See, e.g.*, *Herrera*, 2021 WL 673448, at *13-15; *Bugarin v. All Nippon Airways Co.*, — F. Supp. 3d —, No. 20-CV-3341 (BLF), 2021 WL 175940, at *11-12 (N.D. Cal. Jan. 19, 2021). In *Herrera*, for example, the plaintiffs alleged that the airline "rendered it functionally impossible to specifically request refunds [instead of] vouchers/coupons by inaccessibility of customer service, with wait times of more than two hours frequently reported; and/or obscuring passengers' right to a monetary refund." 2021 WL 673448, at *15 (cleaned up). The district court concluded that the parties' contract required the plaintiffs to take "some affirmative action to select a[ remedial] option," but — similar to this Court's conclusion above — held that, under California law, "where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional." *Id.* (quoting *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490 (Ct. App. 2008)). Ultimately, the court found that the plaintiffs had failed to

---

[8] British Airways argues that the prevention doctrine does not apply because the Non-Arbitration Plaintiffs' difficulties were not the result of its *intentional* actions, but a consequence of the COVID-19 public health emergency. Def.'s Reply 3-4 & n.2; *see also Blackrock Balanced Cap. Portfolio (FI) v. U.S. Bank Nat'l Ass'n*, 86 N.Y.S.3d 484, 486 (1st Dep't 2018) (explaining that the prevention doctrine requires "active conduct" (internal quotation marks omitted)). But putting aside that that is a factual question, the Non-Arbitration Plaintiffs allege that British Airways did act intentionally — for example, by modifying its website to remove online refund claims. Compl. ¶¶ 58, 65.

14

Case No. 1:20-cv-01153-PAB-KLM   Document 70-1   filed 03/31/21   USDC Colorado   pg 15
of 19
Case 1:20-cv-03542-JMF   Document 153   Filed 03/26/21   Page 15 of 19

sufficiently allege that *they* themselves had been prevented from requesting a remedy, and thus dismissed their claims, but it granted them leave to amend, suggesting that more particularized allegations — of the sort made by the Non-Arbitration Plaintiffs here — would be enough to state a breach-of-contract claim. *Id.* The decision in *Bugarin* is substantially similar. *See* 2021 WL 175940, at *12.

### 3. Preemption

The Court's conclusion that the Non-Arbitration Plaintiffs state a plausible contract claim all but disposes of British Airways's remaining argument for dismissal: that the claims are preempted by the ADA. The ADA's preemption provision bars states from enacting or enforcing laws or regulations "related to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1), so as to "ensure that the States [do] not undo federal deregulation with regulation of their own," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Significantly, however, the Supreme Court has held that the ADA does *not* preempt breach-of-contract claims "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995). In such suits, courts are "confine[d] . . . to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233. By contrast, the "*Wolens* exception" to preemption does not extend to statutory claims under state consumer protection laws. *See id.* at 228. Nor does it apply to implied-covenant claims "based on a state-imposed obligation." *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 284-85 (2014). But it does apply to an implied-covenant claim based on an obligation "that the parties voluntarily undertook." *Id.* at 285.

*Ginsberg* illuminates the distinction between implied-covenant claims that are preempted by the ADA and those that are not. In that case, the Supreme Court held that an implied covenant of good faith and fair dealing derived from Minnesota common law was "a state-

15

Case No. 1:20-cv-01153-PAB-KLM   Document 70-1   filed 03/31/21   USDC Colorado   pg 16
of 19
Case 1:20-cv-03542-JMF   Document 153   Filed 03/26/21   Page 16 of 19

imposed obligation" that "enlarge[d the parties'] contractual agreement" and was therefore preempted by the ADA. *Id.* at 286, 289-90. But the Court declined to issue a categorical rule that all claims based on implied covenants were necessarily preempted. *Id.* at 285 ("[T]he reasoning of *Wolens* neither dooms nor spares all such claims."). Instead, the Court drew a distinction between state laws that use the implied-covenant "to effectuate the intentions of parties or to protect their reasonable expectations," which would fall within the scope of the *Wolens* exception to preemption, and state laws that "employ the doctrine to ensure that a party does not violate community standards of decency, fairness, or reasonableness," which would not. *Id.* at 286 (internal quotation marks omitted). Noting that Minnesota prevented parties from contracting out of the covenant at issue and exempted certain types of contracts from the covenant for "policy reasons," the Court concluded that the covenant at issue could not "be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract" and, thus, was preempted by the ADA. *Id.* at 287-88 (internal quotation marks omitted).

     In light of the discussion above, the Court concludes that the Non-Arbitration Plaintiffs' breach claims are not preempted by the ADA. To be sure, they are based in part on an "implied contractual obligation" — namely, the obligation of a party not to frustrate its counterparty's ability to perform a condition precedent. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 367 (S.D.N.Y. 2016), *aff'd*, — F. App'x — , Nos. 19-1031 (L), 19-1297 (xap), 2021 WL 982208 (2d Cir. Mar. 16, 2021) (summary order). Under New York law, however, the prevention doctrine "exists to serve the intent of the parties," *Consol. Edison*, 426 F.3d at 529, and any "implied obligation . . . must be consistent with the intent of the parties to the agreement," *HGCD Retail Servs., LLC v. 44-45 Broadway Realty Co.*, 826 N.Y.S.2d 190, 198 (1st Dep't 2006). In other words, the doctrine exists "to effectuate the intentions of parties or to protect their reasonable expectations," not to promote "community standards of decency,

Exhibit A

Case No. 1:20-cv-01153-PAB-KLM   Document 70-1   filed 03/31/21   USDC Colorado   pg 17
of 19
Case 1:20-cv-03542-JMF   Document 53   Filed 03/26/21   Page 17 of 19

fairness, or reasonableness." *Ginsberg*, 572 U.S. at 286 (internal quotation marks omitted); *see also Cox v. Spirit Airlines, Inc.*, 786 F. App'x 283, 286 (2d Cir. 2019) (summary order) (noting that "routine contract claims" are not preempted, "which necessarily requires employing tools of contractual interpretation"). Thus, the Non-Arbitration Plaintiffs' claim seeks enforcement of a "self-imposed undertaking[]" to which ADA preemption does not apply. *See Wolens*, 513 U.S. at 228.

Once again, this conclusion is supported by the conclusions of other courts confronting similar claims over the last year. *See, e.g.*, *Herrera*, 2021 WL 673448, at *9-12; *Bugarin*, 2021 WL 175940, at *9-10; *Castanares v. Deutsche Lufthansa AG*, No. 20-CV-4261 (MWF) (MRWx), 2021 WL 811455, at *6 (C.D. Cal. Jan. 26, 2021); *Ward*, 2020 WL 8415080, at *12; *Maree v. Deutsche Lufthansa AG*, No. 20-CV-885 (MWF) (MRWx), 2020 WL 6018806, at *5 (C.D. Cal. Oct. 7, 2020). And once again, *Herrera* is instructive. The plaintiffs' claims in that case depended on the "general principle[] of contract law" that "where a contract calls for singular performance and no time is specified, a term calling for performance within a reasonable time is supplied." 2021 WL 673448, at *10 (internal quotation marks omitted). "Under the reasoning of *Ginsberg*," the court concluded that that "common law rule . . . is nothing more than a rule to effectuate the intent of the parties" and thus not preempted by the ADA. *Id.* at *12. So too the Non-Arbitration Plaintiffs' claims in this case.

### C. Damages and Injunctive Relief

Finally, British Airways argues that the Non-Arbitration Plaintiffs may not recover anything beyond compensatory damages and, thus, moves to strike their requests for statutory damages, punitive or exemplary damages, and injunctive relief. Def.'s Br. 24; Def.'s Reply 9-10. The Non-Arbitration Plaintiffs do not oppose the motion to strike their request for statutory

17

damages, *see* Pls.' Opp'n 23, which is thus granted on that basis.  With respect to the other forms of relief, British Airways plainly has the better of the argument as well.

*First*, courts have consistently held that punitive or exemplary damages fall outside the *Wolens* exception and are therefore preempted by the ADA.  *See, e.g.*, *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 n.8 (7th Cir. 1996); *Starker v. Spirit Airlines*, No. 17-CV-6812 (HBP), 2019 WL 4194572, at *8 (S.D.N.Y. Sept. 3, 2019); *Norman v. Trans World Airlines, Inc.*, No. 98-CV-7419 (BSJ), 2000 WL 1480367, at *6 (S.D.N.Y. Oct. 6, 2000).  The Court agrees.  *Second*, there is no basis to depart from the general proposition that "the classic remedy for breach of contract is an action at law for damages."  *Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994) (internal quotation marks omitted).  The injury alleged by the Non-Arbitration Plaintiffs "can be appropriately compensated by an award of monetary damages."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).  Indeed, "if liability is established, damages will not be difficult to calculate."  *Alpha Cap. Anstalt v. Menaged*, No. 15-CV-0987 (WHP), 2015 WL 7271069, at *3 (S.D.N.Y. Nov. 12, 2015).  Thus, "an adequate remedy at law exists, and no irreparable harm may be found to justify specific relief."  *Register.com*, 356 F.3d at 404; *accord Alpha Cap. Anstalt*, 2015 WL 7271069, at *3.  Accordingly, Plaintiffs' request for statutory damages, punitive or exemplary damages, and injunctive relief are stricken.

## CONCLUSION

For the foregoing reasons, British Airways's motion to compel Dominique to arbitrate his claim is GRANTED and this case is STAYED as to him (and *only* him).  Dominique and British Airways shall alert the Court **within thirty days of the resolution of the arbitration proceedings** and, if appropriate, propose next steps in connection with litigation of Dominique's claim.

Exhibit A

Additionally, British Airways's motion to dismiss is GRANTED in part and DENIED in part. Specifically, it is denied with respect to the Non-Arbitration Plaintiffs' contract claims and granted with respect to their request for statutory damages, punitive or exemplary damages, and injunctive relief. The Court declines to grant leave to amend to reinstate these requests for relief, as the defects in the requests are substantive and cannot be cured. *See, e.g.*, *Grytsyk v. Morales*, No. 19-CV-3470 (JMF), 2021 WL 1105368, at *12 (S.D.N.Y. Mar. 22, 2021) ("A district court may deny leave to amend where amendment would be futile." (internal quotation marks omitted)).

Unless and until the Court orders otherwise, British Airways shall file its answer to the Non-Arbitration Plaintiffs' claims within **three weeks of the date of this Opinion and Order**. In addition, the initial pretrial conference is REINSTATED and scheduled for **April 28, 2021, at 4:15 p.m.** The conference will be governed by the Court's notice of initial conference, *see* ECF No. 7, and the parties should prepare accordingly, including by submitting a joint status letter and proposed case management plan no later than the Thursday prior to the conference.

The Clerk of Court is directed to terminate ECF No. 31.

SO ORDERED.

Dated: March 26, 2021
New York, New York

JESSE M. FURMAN
United States District Judge