IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01153-PAB-KLM
(Consolidated with Civil Action Nos. 20-cv-01340-PAB-KLM; 20-cv-01518-PAB-KLM;
20-cv-01689-PAB-KLM; 20-cv-01751-PAB-KLM; and 20-cv-01837-PAB-KLM)

In re FRONTIER AIRLINES LITIGATION

---

### ORDER

---

This matter is before the Court on the Motion to Dismiss Consolidated Class

Action Complaint [Docket No. 63] filed by defendant Frontier Airlines, Inc.  The Court

has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## I.  BACKGROUND[1]

In 2020, the COVID-19 pandemic led to a sharp drop in air travel, which led

airlines to change flight schedules and cancel thousands of flights to avoid incurring

losses caused by operating at lower capacity.  Docket No. 62 at 1, ¶ 1.  This case deals

with passengers who booked tickets with Frontier Airlines, Inc. ("Frontier") and whose

flights were cancelled.

Frontier's Contract of Carriage ("Contract") provides, in relevant part, that,

> [i]n the event (i) a passenger's flight is canceled [by Frontier], . . . Frontier
> will provide transportation on its own flights at no additional charge to the
> passenger's original destination or equivalent destination as provided
> herein.  Frontier will have no obligation to provide transportation on
> another carrier.  If Frontier cannot provide the foregoing transportation,
> Frontier shall, if requested, provide a refund for the unused portion of the
> passenger's ticket in lieu of the transportation under the foregoing.

---

[1]  The following facts are taken from the Consolidated Class Action Complaint,
Docket No. 62, and are assumed to be true for the purposes of resolving this motion.

*Id.* at 2, ¶ 2; at 15, ¶¶ 69–70 (quoting Docket No. 62-1 at 21, § 18(C)).  The Contract also states that "[t]he foregoing shall be the limit of Frontier's liability for the matters covered by this provision."  Docket No. 62-1 at 21, § 18(C).

If a passenger cancels a ticket before a scheduled flight's departure, the Contract states that "the value of the ticket less a service fee will be retained for 90 days from the date of cancellation of the ticket in the form of an electronic credit."  Docket No. 62 at 16, ¶ 76 (quoting Docket No. 62-1 at 12, § 9(A)(1)).

The Contract also provides that, for schedule changes made prior to the day of travel, Frontier may transport the passenger over its own route system to the destination or, "[i]n the event the schedule modification is significant, at Frontier's discretion, it may refund the cost of the unused portion of the ticket."  Docket No. 62-1 at 22, § 18(E).[2]  Plaintiffs allege that, despite this contractual obligation, Frontier refuses to provide monetary refunds to passengers whose flights Frontier cancelled.  Docket No. 62 at 2, ¶ 3.

Instead of fulfilling its obligations to provide refunds, Frontier has provided only 90-day travel vouchers, which were worthless during the pandemic due to travel restrictions and limited flight capacity and routes.  *Id.* at 3, ¶¶ 8–9.  Frontier also re-booked passengers on non-comparable flights, sent "misleading emails" offering travel credits that "duped passengers into purportedly forgoing their right to a refund," and failed to "meaningfully disclose" that credits would expire in 90 days.  *Id.*, ¶ 10.  Frontier

---

[2] Frontier has since changed the contract to require that, "[i]n the event Frontier determines that the schedule modification is significant, Frontier shall, if requested, provide passengers a refund of the cost of the unused portion of the ticket."  Docket No. 62 at 15, ¶ 72 (citing Docket No. 62-2 at 23, § 18(E)).

also waited as long as possible to cancel flights and, instead of cancelling a flight and issuing a refund, Frontier emailed passengers to encourage the passengers to cancel their flights preemptively in exchange for travel credit and an additional voucher, but Frontier failed to disclose that, if passengers simply waited for Frontier to cancel the flights, Frontier would be obligated to provide them with a full monetary refund. *Id.* at 4, ¶ 11. Moreover, when a customer chose to preemptively cancel their flight, Frontier did not refund them, through a travel credit or otherwise. *Id.* at 21, ¶ 91.

Frontier's customer service has been "inadequate," and customers have reported their calls being disconnected, long hold times, and representatives providing "confusing and conflicting information," which has led customers not being able to discuss their options with Frontier or "obtain reliable information regarding their flights." *Id.* at 4, ¶ 12.

The named plaintiffs bring one claim for breach of contract against Frontier on behalf of themselves and other passengers similarly situated. *Id.*, ¶ 13.

### A. The Named Plaintiffs

On December 16, 2019, Nelcy Alexa Rivera-De Leon purchased four round-trip tickets between Tampa, Florida and San Juan, Puerto Rico, departing March 13, 2020 and returning March 20, 2020, for $438.00. *Id.* at 5, ¶ 17. Rivera-De Leon's husband, who was to travel with her, serves in the United States military and was advised on March 12, 2020 that, effective the following day, he was prohibited from non-military travel for 60 days due to the pandemic. *Id.* Rivera-De Leon immediately cancelled her trip through a phone call with Frontier and was advised that she would only receive a

travel credit toward a future trip, rather than a refund, and that the credit had to be used by June 11, 2020.  *Id.* at 5–6, ¶ 18.  Rivera-De Leon requested a full refund because the military travel restriction would prevent her husband from traveling in the near future and her son was high-risk for COVID-19 complications.  *Id.*  Frontier ultimately cancelled her return flight and, though she contacted Frontier multiple times, refused to provide her a refund.  *Id.* at 6, ¶ 19.

On February 24, 2020, Stephanie Muters purchased two round-trip tickets between Syracuse, New York and Tampa, Florida, departing April 5, 2020 and returning April 13, 2020, for $849.60.  *Id.*, ¶ 21.  Muters, who is a civilian United States Department of Defense employee and who has a health-compromised daughter, was advised on March 12, 2020 that, effective the following day, she was prohibited from non-military travel for 60 days.  *Id.*, ¶ 22.  On March 17, 2020, Muters received an email from Frontier recommending that she cancel her flights in exchange for a "bonus" voucher of $50 per passenger to be used on a new booking.  *Id.* at 7, ¶ 23.  On March 22, 2020, the Governor of New York issued a stay-at-home order that was extended through May 28, 2020 and, the next day, the Governor issued an order requiring people traveling to Florida to quarantine for fourteen days.  *Id.*, ¶ 24.  As a result of these circumstances, Muters cancelled her trip.  *Id.*  Muters was told that she would only receive a travel credit that expired June 17, 2020.  *Id.*, ¶ 25.  Frontier ultimately cancelled the flights.  *Id.*  Muters was unable to use her credit by June 17, 2020 because of the ongoing pandemic-related restrictions and uncertainty regarding her daughter's ability to travel.  *Id.*

On February 27, 2020, Shirley Johnson purchased a round-trip ticket between Philadelphia, Pennsylvania and Orlando, Florida, departing April 18, 2020 and returning April 25, 2020, for $797.83.  *Id.*, ¶ 27.  On April 8, 2020, Frontier emailed Johnson requesting that she cancel her reservation, which she did, and offering a travel credit. *Id.* at 8, ¶ 28.  Frontier did not adequately disclose that the credit would expire in 90 days.  *Id.*  A few days later, Frontier cancelled Johnson's flight and refused to convert her credit to a refund after she requested.  *Id.*

In February 2020, Jeffrey Bone purchased two round-trip tickets between St. Louis, Missouri and Cancun, Mexico, for $1,352.72.  *Id.*, ¶ 30.  In June 2020, Frontier cancelled his flight and, when he called to request a refund, put him on hold for nearly an hour.  *Id.*, ¶ 31.  Frontier then claimed that Bone had "purportedly accepted a 'schedule change through email'" and offered him a 90-day travel credit and a $50 voucher.  *Id.*

On December 20, 2019, Danielle Porreca purchased two round-trip tickets between Philadelphia and Las Vegas for $629.20.  *Id.*, ¶ 33.  In March 2020, Frontier emailed Porreca requesting that she cancel her reservation, which she did, and then offering a 90-day travel credit.  *Id.* at 9, ¶ 34.  Porreca has requested a refund but was refused, and her credit has expired.  *Id.*

In February and March 2020, ChaCha Powell purchased tickets for "a few trips" to Jacksonville, Florida and Atlanta, Georgia for $575.40.  *Id.*, ¶ 36.  Frontier sent Powell emails encouraging she cancel her reservations, and the airline cancelled "at least one" of her flights.  *Id.*, ¶ 37.  Powell requested a refund, but Frontier refused and

claimed Powell accepted a 90-day travel credit via email.  *Id.*

In January 2020, David Dickstein purchased a red-eye, non-stop flight between Las Vegas, Nevada and Orlando, Florida to depart March 29, 2020 for $227.20.  *Id.*, ¶ 39.  On March 28, 2020, Frontier cancelled Dickstein's flight and re-booked him on a flight with an overnight layover in Chicago, which would result in his arrival in Orlando more than 12 hours later than his original booking, causing him to lose a full day of his trip.  *Id.* at 9–10, ¶ 40.  Dickstein tried to call Frontier but was unable to reach customer service.  *Id.* at 10, ¶ 41.  Because he did not want to "no-show" his flight, Dickstein cancelled and re-booked his reservation and requested a refund.  *Id.*  Frontier refused and provided him with a 90-day travel credit.

On January 28, 2020, Kelli Capra booked flights from Denver, Colorado to Puerto Vallarta, Mexico for $5,132.75.  *Id.*, ¶ 43.  In March 2020, due to pandemic-related travel restrictions, Capra called to cancel her reservations.  *Id.*, ¶ 44.  After multiple calls, Capra was told in writing that she would receive travel credits that would be valid until March 2021; however, when she attempted to book another flight, she was told that her credits expired in June 2020.  *Id.*

Plaintiffs bring one claim for breach of contract.  *Id.* at 25–29.  Specifically, plaintiffs argue that Frontier breached Section 18(C) of the Contract, which allegedly requires it to provide either alternative transportation or a refund; Section 18(E), which states that, if the schedule modification is significant, at Frontier's discretion, it may offer a refund; Section 20(A)(1), which allegedly incorporates DOT regulations requiring Frontier to issue refunds when it cancels flights for any reason; and Section 22(A),

which states that the Contract will be subordinate to applicable law. *Id.* at 26,

¶¶ 111–114. Plaintiffs state that the breach occurred when Frontier failed to provide

monetary refunds upon request when Frontier cancelled flights and when Frontier

automatically re-booked passengers on non-comparable flights without providing

refunds upon request. *Id.* at 27, ¶¶ 120–21. By failing to timely advise passengers that

their flights would be cancelled, plaintiffs argue that Frontier coerced them into

accepting travel credits or additional vouchers instead of cash refunds, which

customers would be entitled to when Frontier cancelled the flights. *Id.*, ¶ 122.

Alternatively, plaintiffs argue, Frontier "entered into a new agreement with its

customers" when it unilaterally "impos[ed] a 90-day expiration date on the travel

credits," which was not a term of Frontier's offer and formed no part of any agreement

with passengers. *Id.* at 28, ¶ 125.

Frontier filed a motion to dismiss plaintiffs' claim, arguing that the Contract

expressly prohibits class action claims, that Frontier did not breach the Contract, and

that plaintiffs have no damages. Docket No. 63 at 1. Frontier also argues that plaintiffs

cannot incorporate federal law into their breach of contract claim, and even if they

could, that aspect of the claim would be preempted. In addition, Frontier argues that

plaintiffs cannot seek damages other than compensatory damages, that plaintiffs lack

standing to pursue injunctive relief, and that the plaintiffs who did not originally file

complaints before consolidation – Bone, Powell, Porreca, Dickstein, and Capra – must

be dismissed because plaintiffs did not seek or obtain permission from the Court to join

them. *Id.* at 1–2.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  However, a plaintiff still must provide "supporting factual averments" with her allegations.  *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)).  Otherwise, the Court need not accept conclusory allegations.  *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS[3]

The Court will first address whether plaintiffs Bone, Powell, Porreca, Dickstein, and Capra, who did not previously file complaints against Frontier, may proceed in this matter.  Next, the Court will consider whether plaintiffs failed to state a claim for breach of the Contract and, if so, what relief plaintiffs are entitled to.

### A.  Newly-Added Plaintiffs

Frontier argues that plaintiffs Bone, Powell, Porreca, Dickstein, and Capra must

---

[3] The Court applies Colorado law because plaintiffs' claims arise under the Contract, which contains a valid choice of law provision.  *See* Docket No. 62-1 at 26, § 22(J).  Federal courts sitting in diversity jurisdiction apply the choice of law rules of their forum states.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Colorado follows the Restatement (Second) of Conflict of Laws (1971) for contract actions.  *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310 (10th Cir. 2014) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979)).  The Restatement directs the Court to consider any choice-of-law provision in the contract.  Restatement § 187.  Colorado courts, consistent with the Restatement, "apply the law chosen by the parties unless there is no reasonable basis for their choice or unless applying the chosen state's law would be contrary to the fundamental policy of the state whose law would otherwise govern." *Target Corp. v. Prestige Maintenance USA, Ltd.*, 351 P.3d 493, 497 (Colo. App. 2013). Here, there is a reasonable basis for choosing Colorado law because, although plaintiffs are from different states, they contracted with Frontier, a Colorado company, and chose to bring this action in Colorado.

be dismissed from this action because plaintiffs did not seek leave to add these plaintiffs to the amended complaint.  Docket No. 63 at 14–15.  After consolidation, the parties agreed that the consolidated class action complaint would supersede all pending complaints in the consolidated actions.  *See* Docket No. 57 at 1, ¶ 2.  Plaintiffs thus argue that, because the consolidated class action complaint superseded all pending complaints in all actions and became the "legally operative complaint," they were permitted to add additional plaintiffs, which they claim is common in this sort of litigation.  Docket No. 68 at 15.

The Court agrees with plaintiffs.  When the parties agreed that plaintiffs were permitted to file a consolidated class action complaint and that the new complaint would supersede any other pending complaints, *see* Docket No. 57 at 1, ¶ 2, the parties also agreed that the original complaints were of "no legal effect."  *See Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019) (quoting *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991))); *see also Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991).  Moreover, neither the Court's order granting the unopposed motion to consolidate, *see* Docket No. 35, nor the parties' status report, *see* Docket No. 57, limited the claims or parties that plaintiffs were permitted to add or drop in the consolidated class action complaint.  Even if plaintiffs had sought leave to amend, as Frontier appears to believe would have been proper, the Court would have found no undue delay, bad faith, or prejudice.  First, the consolidated class action complaint was filed within the time frame that the parties agreed to in the joint status report, *see id.*,

and Frontier was able to move to dismiss the newly-added plaintiffs on the merits, which it has done, within the time that the parties agreed to. *See id.* Second, given that the parties agreed that the consolidated class action complaint superseded the original complaints yet did not agree to limit plaintiffs' ability to amend the allegations or parties in the consolidated complaint, the Court finds no bad faith. Finally, there is no prejudice to Frontier in the addition of Bone, Powell, Porreca, Dickstein, and Capra, as the amendment does not "unfairly affect[] [Frontier] 'in terms of preparing [its] defense to the amendment,'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971), because the amendment does not "arise out of a subject matter different from what was set forth in the [original] complaint[s]" or "raise significant new factual issues." *Id.* The Court will therefore deny Frontier's motion to dismiss the claims of Bone, Powell, Porreca, Dickstein, and Capra based on them being improperly added.

### C. Failure to State a Claim

Frontier seeks dismissal of plaintiffs' claim for failure to plausibly allege that Frontier breached the Contract. The elements of a breach of contract claim under Colorado law are the existence of a binding agreement; plaintiff's performance of plaintiff's obligations or some justification for non-performance; defendant's failure to perform its obligations; and damages resulting therefrom. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The parties' dispute centers on the third element – whether plaintiffs have plausibly alleged that Frontier failed to perform its obligations under the Contract. Frontier argues that plaintiffs have not plausibly alleged

this element because Frontier had no obligation to refund the plaintiffs who cancelled their own flights and provided credits to those who did.  Docket No. 63 at 6–9.

In order to determine whether plaintiffs have plausibly stated a claim, the Court must first consider whether the DOT regulations and notices were incorporated in the Contract and whether plaintiffs' claim is preempted by the Airline Deregulation Act ("ADA").  *See* Docket No. 63 at 6–13.

### 1. *Incorporation of DOT regulations and notices*

Plaintiffs contend that the Contract expressly incorporates United States Department of Transportation ("DOT") notices and other federal regulations, Docket No. 62 at 26, ¶¶ 113–14, because the Contract provides that refunds "will be subject to government laws, rules, regulations, or orders of the country in which the ticket was originally purchased and of the country in which the refund is being made," Docket No. 62-1 at 23, § 20(A)(1), and that, "[i]n all cases, this Contract of Carriage will be subordinate to any applicable law."  *Id.*, at 25, § 22(A).  Plaintiffs allege that these regulations require airlines to issue refunds when the airline cancels a flight and that Frontier has violated these regulations by failing to provide refunds.  Docket No. 62 at 2, ¶ 4; *id.* at 16, ¶ 78.[4]  Plaintiffs thus conclude that, because the regulations are

---

[4] Specifically, plaintiffs state that, on April 3, 2020, DOT issued an enforcement notice stating that airlines have a "longstanding obligation . . . to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."  *Id.* at 2, ¶¶ 4–5 (citing Enhancing Airline Passenger Protections, 76 Fed. Reg. 23,110-01, 23,129 (Apr. 25, 2011) ("Since at least the time of an Industry Letter of July 15, 1996 . . . the Department's Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is cancelled and the passenger wishes to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action." (citation

incorporated into the Contract, Frontier's failure to comply with the regulations amounts to breach of the Contract.  Frontier argues that these provisions of the Contract do not incorporate federal law or regulation.  Docket No. 63 at 10.

The April 3, 2020 enforcement notice was published after plaintiffs purchased their tickets.  Docket No. 62 at 2, ¶¶ 4–5; *id.* at 5–10, ¶¶ 17, 21, 27, 30, 33, 36, 39, 43. Thus, incorporation of that notice into the Contract is impossible because plaintiffs and Frontier could not have agreed to incorporate into the Contract a notice that did not yet exist.  Additionally, courts have found language similar to the Contract's to be too general to effect incorporation.  *See, e.g.*, *Rudolph v. United Airlines Holdings, Inc.*, 2021 WL 534669, at *9 (N.D. Ill. Feb. 12, 2021) (language that "in the event of a conflict" between the contract's provisions and "laws, regulations, rules, and security directives imposed by governmental agencies, the latter shall prevail" was not specific enough to incorporate DOT notices); *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1192 (N.D. Cal. Jan. 19, 2021) (finding that "boilerplate contractual language guaranteeing compliance with international or domestic aviation laws does not incorporate extraneous law into the terms of an airfare contract" (citation omitted)); *Castanares v. Deutsche Lufthansa AG*, 2020 WL 6018807, at *4 (C.D. Cal. Oct. 9, 2020) ("The Court agrees with Lufthansa that DOT regulations relied upon by Plaintiffs are not expressly incorporated into Lufthansa's Conditions of Carriage."); *Maree v. Deutsche Lufthansa AG*, 2020 WL 6018806, at *4 (C.D. Cal. Oct. 7, 2020) (same);

---

omitted))).  Plaintiffs claim that this obligation applies whenever the cancellation is through no fault of the passenger, regardless of whether the disruption is within the carrier's control and regardless of whether the passenger purchased a "non-refundable" ticket.  *Id.* at 3, ¶ 6, *id.* at 17, ¶ 80.

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, 2020 WL 5625740, at \*5 (C.D. Cal. Sept. 17, 2020) (contract of carriage indicating that where a conflict existed between its provisions and "applicable Tariffs and Conventions, the Tariffs and/or Conventions will always take precedence" did not incorporate DOT regulations regarding refund timing); *Volodarskiy v. Delta Air Lines, Inc.*, 2012 WL 5342709, at \*3 (N.D. Ill. Oct. 29, 2012) (contract of carriage provision indicating that where contract was contrary to "applicable laws, government regulations, or orders," the latter was insufficient to incorporate European regulation governing customer refunds).

The Court also finds that the Contract's general reference to refunds being subject to the rules and regulations of the country where the ticket was purchased and where the refund is being made, Docket No. 62-1 at 23, § 20(A)(1), and that the Contract will be "subordinate to [] applicable law," *id.*, at 25, § 22(A), insufficiently specific to incorporate the precise regulations that plaintiffs cite to. *See, e.g.*, *Bugarin*, 513 F. Supp. 3d at 1192 ("The language to which Bugarin points, indicating that ANA may cancel a passenger's reservation 'in accordance with Applicable Laws' and that ANA's carriage and other services shall be 'subject to . . . Applicable Laws" simply is not specific enough." (citations omitted)); *see also Daversa-Evdyriadis*, 2020 WL 5625740, at \*4 ("[O]nly language explicit enough to reflect an intent to be affirmatively bound by a specific aviation law or regulation is sufficient to result in incorporation."). There is also no clear intent on Frontier's part to be bound by the specific regulations that plaintiffs refer to.

### 2. Preemption

Frontier argues that plaintiffs' claim is preempted by the ADA because plaintiffs

have included allegations that "go beyond [their] breach of contract claim" by arguing that Frontier has attempted to trick or dupe its customers into cancelling their flights before Frontier did so in order to avoid paying refunds.  Docket No. 63 at 11–13.  Frontier argues that these allegations "sound in fraud or consumer protection," rather than a breach of the airline's self-imposed undertakings.  *Id.* at 13.[5]  Plaintiffs respond that their breach of contract claim arises under the Contract and Frontier's own self-imposed undertakings and thus the claim is not preempted by the ADA.  Docket No. 68 at 12–13.

"The Airline Deregulation Act of 1978 prohibits States from enacting or enforcing any law relating to air carrier rates, routes, or services."  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 221–222 (1995) (alterations omitted).  However, while "the ADA's preemption prescription bars state-imposed regulation of air carriers," the statute "allows room for court enforcement of contract terms set by the parties themselves."  *Id.*  The exception to preemption recognized by *Wolens* is narrow.  *Bugarin*, 513 F. Supp. 3d at 1189.  Even when a state-law claim is based on an airline's "self-imposed undertakings," *Wolens*, 513 U.S. at 228, the claim is preempted if it "seeks to enlarge the contractual obligations that the parties voluntarily adopt."  *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 276 (2014).  Frontier argues that, for plaintiff to avoid preemption on their breach of contract claim under the ADA, they must show that their claim seeks to

---

[5] Frontier also argues that plaintiffs are attempting to "enlarge the obligations voluntarily undertaken by the parties through the Contract by introducing external documents" in the form of the DOT notices and regulations, which means that the claim falls outside of the narrow exception in *Wolens*.  *Id.* at 12.  The Court need not address this argument because the DOT notices and regulations were not incorporated into the Contract.

recover "solely for the airline's alleged breach of its own, self-imposed undertakings." Docket No. 63 at 11–12 (quoting *Wolens*, 513 U.S. at 228).

The Court finds that plaintiffs' allegations do not seek to enlarge the contractual obligations or the breach of Contract claim and are therefore not preempted by the ADA.  In their response to Frontier's motion, plaintiffs disclaim any intent to exceed the bounds of the Contract and state that they seek "merely to enforce [the Contract's] express terms."  Docket No. 68 at 13.  Thus, the Court does not consider plaintiffs' allegations that Frontier has duped or tricked passengers outside of plaintiffs' claim that Frontier did not perform the Contract.[6]

### 3. Adequacy of the pleading

#### a. Plaintiffs who cancelled their own flights

Because the amended complaint alleges that plaintiffs Rivera-De Leon, Muters, Johnson, Porreca, and Capra cancelled their own flights and received a travel credit, Frontier argues that they are not entitled to further relief under the language of the Contract.  Docket No. 63 at 6–7.  Frontier cites to Section 9(A)(1) of the Contract, which states,

> If a passenger cancels a ticket before the scheduled flight departure time, the value of the ticket less a service fee will be retained for 90 days from the date of cancellation of the ticket in the form of an electronic credit. The credit has no cash or refund value and may only be applied to a single subsequent ticket on a Frontier flight for the same passenger as the original ticket.

---

[6] The Court need not consider whether plaintiffs' citations to DOT notices and regulations enlarge plaintiffs' breach of contract claim beyond the exception in *Wolens* because the Court has already concluded that the Contract does not incorporate those authorities.

Docket No. 62-1 at 12, § 9(A)(1).

Frontier relies on *Rudolph v. United Airlines Holdings, Inc.*, 2021 WL 534669, (N.D. Ill. Feb. 12, 2021), which construed a similar provision in United Airlines's contract of carriage. United's contract stated that, for a voluntary cancellation of a refundable ticket, United "may allow a portion of the non-refundable fare . . . to be applied towards the purchase of future travel," which the court construed as language providing a travel credit. *Id.* at *1. The court in *Rudolph* concluded that the plaintiff's claim "fail[ed] in full, because, according to the complaint, Mr. Rudolph cancelled his flight before United did." *Id.* at *8.

Plaintiffs argue that Frontier did not perform under the Contract because the Contract requires Frontier to provide refunds. Docket No. 68 at 5. As to the passengers who cancelled their own bookings, plaintiffs argue that Frontier breached the Contract by "bombarding them with emails intended to and which did impede their ability to secure a refund when Frontier invariably cancelled their flights." *Id.* at 7. Plaintiffs contend that this amounts to interference or hindrance of performance because Frontier interfered with plaintiffs' reasonable expectations regarding the Contract. *Id.*

Plaintiffs are mistaken about what the contract requires. The Contract does not require those who cancel their own flights prior to departure to be issued a monetary refund. Rather, as set out above, the Contract states, "[i]f a passenger cancels a ticket before the scheduled flight departure time, the value of the ticket less a service fee will be retained for 90 days from the date of cancellation of the ticket in the form of an

electronic credit."  Docket No. 62-1 at 12, § 9(A)(1).[7]

Plaintiffs' arguments that Frontier breached the Contract by sending emails intending to dissuade plaintiffs from securing a refund and that this was "prevention or hindrance" are not persuasive.  Docket No. 68 at 7.  Plaintiffs rely on the Restatement for this argument; however, the Restatement does not provide support.  It states that prevention or hindrance "of any occurrence or performance requisite under the contract" is a breach of contract.  Restatement (First) of Contracts § 315 (1932).  But plaintiffs do not explain what requisite term the emails impeded them from performing.  If plaintiffs mean to imply that they were prevented or hindered from requesting a refund, that argument fails because Rivera-De Leon, Johnson, and Porreca each requested a refund, and Muters does not allege that she tried to request one.  The allegations concerning Capra's attempt to secure a refund are not specific enough to show prevention or hindrance.  She alleges that she made "multiple phone calls," Docket No.

---

[7] Plaintiffs have asked the Court to consider *Ide v. Brit. Airways PLC*, 2021 WL 1164307, (S.D.N.Y. Mar. 26, 2021), and *Bombin v. Sw. Airlines Co.*, 2021 WL 1174561, (E.D. Pa. Mar. 29, 2021), both of which were decided after plaintiffs filed their response. Docket No. 70.  These cases are distinguishable.  In *Ide*, British Airways's contract of carriage stated that passengers could choose between three options – immediate rescheduling, rescheduling at the customer's convenience, or a refund.  *Ide*, 2021 WL 1164307, at *5.  The court found that plaintiffs plausibly alleged that British Airways breached the contract when it refused to issue monetary refunds and only provided credits, which the court noted are not equivalent.  *Id.*  Similarly, in *Bombin*, the court found ambiguity in Southwest's contract because the contract stated in one section that Southwest could decide whether to issue a credit or a refund, while in another section, the contract provided customers the "option to . . . receive a refund."  2021 WL 1174561, at *6 (alteration omitted).  As in *Ide*, the court found it plausible that Southwest breached the contract when it refused to provide the option of a refund. Here, however, customers do not have a choice of remedy, and the Contract never mentions monetary refunds.  Section 9(A)(1) states that customers will have a 90-day credit.  Docket No. 62-1 at 12, § 9(A)(1).

62 at 10, ¶ 44, but courts have found allegations like this insufficient to establish that the airline prevented the plaintiff from performance. *See, e.g.*, *Bugarin*, 513 F. Supp. 3d at 1193.

As to plaintiffs' argument that Frontier's emails interfered with their reasonable expectations under the contract, plaintiffs do not establish what expectations they believe Frontier interfered with or how these emails could have interfered with their expectations. If the expectation was that, if they cancelled their flight before Frontier did they would receive a cash refund, plaintiffs have provided no allegations that such an expectation would have been reasonable given that the Contract makes clear that they are entitled to a 90-day credit that has "no cash or refund value," *see* Docket No. 62-1 at 12, § 9(A)(1), and the email that plaintiffs allege Frontier sent says that the $50 voucher is "in addition to a travel credit applicable for a future Frontier flight." Docket No. 62 at 19–20, ¶ 88.[8] The Court will therefore dismiss the breach of contract claim for the plaintiffs who cancelled their tickets before Frontier did because plaintiffs have

---

[8] In response, plaintiffs argue in the alternative that "acceptance of Frontier's 'offer' created a new contract that did not impose a 90-day limit on the travel voucher." Docket No. 68 at 8. The "offer" that plaintiffs appear to be referring to is the email that Frontier sent offering an additional $50 voucher for passengers who cancelled their flights. Docket No. 62 at 19–20, ¶ 88. Plaintiffs argue that this amounts to a "novation," which extinguishes a previously existing contract by substituting a new contract or obligation. *See Moffat County State Bank v. Told*, 800 P.2d 1320, 1323 (Colo. 1990). Plaintiffs do not plead novation in the complaint, and Frontier does not raise this argument in its motion. The Court declines to consider the argument for the first time in plaintiffs' response because a motion to dismiss tests the sufficiency of allegations in a complaint, not a response. *See, e.g., Shepherd v. U.S. Olympic Comm.*, 464 F. Supp. 2d 1072, 1089 (D. Colo. 2006)*, aff'd sub nom. Hollonbeck v. U.S. Olympic Comm.*, 513 F.3d 1191 (10th Cir. 2008); *Est. of Goodwin v. Connell*, 376 F. Supp. 3d 1133, 1144 (D. Colo. 2019) ("a motion under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint").

failed to plausibly allege that Frontier's conduct breached the Contact.

### b.  Plaintiffs whose flights Frontier cancelled

Plaintiffs allege that Frontier breached the Contract by providing only travel vouchers rather than refunds to plaintiffs whose flights Frontier cancelled.  *See* Docket No. 62 at 8–10, ¶¶ 31–42.  These plaintiffs include Bone, Powell, and Dickstein.  *Id.* Frontier argues that plaintiffs fail to plausibly allege that it breached the Contract because it performed as the Contract required.  Docket No. 63 at 7–9.  Frontier cites to Sections 18(C) and (E).  *Id.*  Section 18(C) states, in part, "if a passenger's flight is canceled," Frontier will, "to the extent possible," provide alternative transportation or, if Frontier cannot do so, it will, if requested, provide a refund for the unused portion of the passenger's ticket.  Docket No. 62-1 at 21, § 18(C).  Section 18(E) states that, if a flight schedule change is significant, Frontier may, at its discretion, refund the cost of the unused portion fo the ticket.  *Id.* at 22, § 18(E).

As to plaintiff Bone, Frontier argues that the allegations in the complaint are vague and do not adequately allege breach of contract.  Docket No. 63 at 7.  The complaint alleges that Frontier cancelled Bone's flight in June 2020, that he requested a refund, and that he tried calling Frontier, which claimed that he had already accepted a "schedule change" through email and offered him a 90-day travel credit and a $50 voucher.  Docket No. 62 at 8, ¶ 31.  Frontier claims that the complaint's allegations regarding Bone are insufficient because they provide no details about why his flight was cancelled, the "import" of the schedule change, or whether he had accepted the schedule change.  Docket No. 63 at 7–8.  Because the complaint does not allege that Frontier could not – or otherwise refused – to re-book Bone or that Frontier determined

20

that the schedule change was significant, Frontier argues that plaintiffs have not plausibly alleged an actual breach of the Contract regarding Bone. *Id.* at 8.

Plaintiffs respond that Frontier breached the Contract when it cancelled Bone's flight and refused his request for a refund. More specifically, plaintiffs claim that Frontier's argument depends on whether Frontier failed to re-book Bone on a new flight, which plaintiffs have no obligation to allege. Plaintiffs also contend that Sections 18(c) and 18(E) of the Contract "raise matters of contract interpretation" that require discovery. Docket No. 68 at 9–10.

While it is true that a plaintiff's allegations are assumed to be true on a motion to dismiss, the allegations must be sufficient to meet the pleading burden of plausibility. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). As to Bone's re-booking, he does not allege that he refused the schedule change and did not take the new flight. Moreover, the Contract required Frontier to provide alternative transportation or, if it could not, a refund. Docket No. 62-1 at 21, § 18(C). Plaintiffs do not allege that Frontier could not provide alternative transportation such that it was obligated to refund Bone's ticket upon request. Nor do plaintiffs allege that the new flight was a "significant" change, permitting Frontier to exercise its discretion to refund the ticket. The Court thus finds that plaintiffs have failed to plausibly allege that Frontier breached the Contract in its treatment of Bone.

As to plaintiff Powell, Frontier argues that the allegations are vague and do not plausibly allege a breach of the Contract.  Docket No. 63 at 8.  Frontier contends that, like Bone, plaintiffs do not allege under what circumstances Frontier cancelled Powell's flight or flights or that she was entitled to a refund under the Contract.  *Id.*  Furthermore, Frontier states that the Contract permits Frontier to cancel flights and re-book them in lieu of refunding passengers.  *Id.*  Plaintiffs allege that Powell purchased tickets for "a few trips" to Jacksonville, Florida, and Atlanta for $575.40.  Docket No. 62 at 9, ¶ 36.  Plaintiffs claim that Frontier sent emails encouraging Powell to cancel her reservations, and the airline cancelled "at least one" of her flights.  *Id.*, ¶ 37.  Plaintiffs also allege that Powell requested a refund, but Frontier refused and claimed that she had accepted the travel credit already.  *Id.*  The Court finds that the allegations concerning Powell also fail to plausibly allege that Frontier breached the Contract because plaintiffs do not allege which flight Frontier cancelled, whether Frontier was able to provide alternative transportation, or, if so, whether the route change was so significant that Frontier may have exercised its discretion to refund her ticket.

As to plaintiff Dickstein, plaintiffs allege that he purchased a direct, red-eye flight, but Frontier re-routed him and put him on a flight with an overnight layover, which would have delayed his arrival at his destination by more than 12 hours and caused him to lose a full day of his planned trip.  *Id.* at 9–10, ¶¶ 39–40.  Plaintiffs state that he tried to call Frontier, but was unable to reach customer service.  *Id.* at 10, ¶ 41.  He then cancelled and re-booked his reservation and requested a refund, but Frontier refused to provide him one and instead gave him the travel credit.  Frontier argues that the Contract permitted it to re-book Dickstein on another flight in lieu providing a refund and

that plaintiffs do not allege that Frontier determined that the schedule modification was significant and that he was entitled to a refund.  Docket No. 63 at 8–9.

While Frontier is correct that the Contract permitted it to either re-book Dickstein or provide him a refund, Dickstein has plausibly alleged that this schedule modification the day before his trip, such that he arrived to his destination 12 hours later than he intended and had an overnight layover, was "significant."  However, the Court finds that Dickstein's allegations are not sufficient to allege he was entitled to a refund from Frontier, as the Contract provides Frontier discretion in this process.  *See* Docket No. 62-1 at 22, § 18(E)(2) ("In the event the schedule modification is significant, at Frontier's discretion, it may refund the cost of the unused portion of the ticket.").  Although the Contract is unclear what it leaves to Frontier's discretion – discretion as to whether a schedule modification is "significant" or discretion whether to provide a refund[9] – this lack of clarity has no bearing on the success of Dickstein's claim because plaintiffs provide no allegations concerning Frontier's exercise of its discretion or whether it did so improperly under the Contract.  Plaintiffs contend that no reasonable interpretation of the Contract would "allow Frontier the discretion to regard a 12-hour delay as insignificant."  Docket No. 68 at 10 (internal quotation omitted).  However, there are no allegations regarding this issue in the complaint, and a motion to dismiss tests the sufficiency of allegations in a complaint.  *Goodwin*, 376 F. Supp. 3d at 1144 ("a motion

---

[9] As mentioned previously, Frontier has since changed the contract to require that, "[i]n the event Frontier determines that the schedule modification is significant, Frontier shall, if requested, provide passengers a refund of the cost of the unused portion of the ticket."  Docket No. 62-2 at 23, § 18(E).  This change is immaterial to the Court's analysis, however, as the new language was not operative when plaintiffs purchased their tickets.

under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint"). The Court

will therefore dismiss the complaint as to the plaintiffs whose flights Frontier cancelled.[10]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Dismiss consolidated Class Action Complaint

[Docket No. 63] is **GRANTED**.  It is further

**ORDERED** that the named plaintiffs' breach of contract claim is **DISMISSED**

**with prejudice**.  It is further

**ORDERED** that this case is closed.[11]


DATED September 13, 2021.



BY THE COURT:


PHILIP A. BRIMMER
Chief United States District Judge

---

[10] Because the Court has dismissed the complaint, it need not consider the issues of damages, injunctive relief, or whether plaintiffs agreed to a class action waiver.

[11] Because the Consolidated Class Action Complaint, Docket No. 62, supersedes all other complaints in the consolidated actions, see Docket No. 57 at 1, ¶ 2, the plaintiffs discussed herein are all of the plaintiffs in this matter, and dismissal of their claims results in the dismissal of the case.